# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

MCOM IP, LLC,

     Plaintiff,

     v.

CISCO SYSTEMS, INC.,

     Defendant.

Case No. 6:22-cv-00261-ADA

## CISCO SYSTEMS MOTION TO DISMISS THE COMPLAINT OF MCOM IP, LLC PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD ......................................................................................... 1

III.   RELEVANT FACTS FROM THE COMPLAINT ............................................ 4

IV.   ARGUMENT ....................................................................................................... 9

      A.    Plaintiff's Claim for Direct Infringement Should Be Dismissed ........................... 9

           1.    Plaintiff Makes No Plausible Allegation that Cisco Provides a "Unified Electronic Banking System" (Preamble) ..................................................... 9

           2.    Plaintiff Makes No Plausible Allegation that Cisco Provides, as Part of a "Unified Electronic Banking System," a "Multi-Channel Server," That Is Communicatively Coupled to "Independent Computer Systems," where "Each . . . Independent Computer System Is Associated with an Independent Financial Institution." (Limitation (a) and (b)) ............................................................................................... 10

           3.    Plaintiff Makes No Plausible Allegation that Cisco Provides, as Part of a "Unified Electronic Banking System," "One or More E-Banking Touch Points," Including an "Automatic Teller/Transaction Machine (ATM)," "an Online Accessible Banking Website," and "a Wireless Device." (Limitation (c)) .......................................................................... 11

           4.    Plaintiff Makes No Plausible Allegation that Cisco Provides "Targeted Marketing Content." (Limitation (e)) ..................................................... 13

      B.    Plaintiff's Claims for Indirect Infringement Should be Dismissed ..................... 14

V.    CONCLUSION ................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
    No. 3:19-CV-01025 (VAB), 2020 WL 5502323 (D. Conn. Sept. 11, 2020)............................3

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)................................................................................................1, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................1, 2, 14

*Bot M8 LLC v. Sony Corp.*
    4 F.4th 1342 (Fed Cir. 2021) ......................................................................................11

*Bowlby v. City of Aberdeen*,
    681 F.3d 215 (5th Cir. 2012) .........................................................................................2

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011).......................................................................... passim

*Chhim v. Univ. Of Tex. at Austin*,
    836 F.3d 467 (5th Cir. 2016) ......................................................................................11

*De La Vega v. Microsoft Corp.*,
    No. 6:19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................... passim

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006).................................................................................3, 14

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920, 1926 (2015)........................................................................................3

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)......................................................................................................3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93  (2016)......................................................................................................4

*Hypermedia Navigation LLC v. Google LLC*,
    No. 18-cv-06137-HSG2019 WL 1455336 (N.D. Cal. April 2, 2019) ......................................15

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    No. 6:17-cv-143-RPJCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ........................3, 15

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
 No. SA-11-CV-163-XR; SA-11-CV-713-XR, 2013 WL 2453267 (W.D. Tex.
 June 4, 2013).....................................................................................................................14

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
 594 F.3d 383 (5th Cir. 2010) ............................................................................................2

*Lyda v. CBS Corp.*,
 838 F.3d 1331 (Fed. Cir. 2016)......................................................................................2, 3

*Mosaic Brands v. Ridge Wallet LLC*,
 No. 2:20-cv-04556-AB (JCx), 2020 WL 5640233 (C.D. Cal. Sept. 3, 2020) ........................10

*Parity Networks, LLC v. Cisco Sys., Inc.*,
 No. 6:19-cv-209-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)......................4, 14, 15

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
 No. 4:19-CV-876-SDJ2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ................................3, 14

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
 No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2015)........................ passim

*Taylor v. Books A Million, Inc.*,
 296 F.3d 376 (5th Cir. 2002) ..........................................................................................12

*Vervain, LLC v. Micron Tech., Inc.*,
 No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ...........................10, 11

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,
 609 F.3d 1308 (Fed. Cir. 2010)........................................................................................15

## Statutes

35 U.S.C. § 271(a) .................................................................................................................2

35 U.S.C. § 271(c) .................................................................................................................3

## Other Authorities

Fed. R. Civ. P. 8(a) ...............................................................................................................2

Fed. R. Civ. P. 12(b)(6).........................................................................................................1, 3

## I.      INTRODUCTION

Cisco Systems, Inc. ("Cisco") is not a bank.  Cisco does not provide, and Plaintiff mCom IP, LLC ("mCom" or "Plaintiff") cannot allege, that Cisco provides a "unified banking system." Instead, Plaintiff provides a slapdash claim chart alleging infringement of a single system claim by cobbling together screen captures from three Cisco marketing documents and one video.  But none of those Cisco documents or videos identifies any actual product offered by Cisco, let alone a product that can plausibly be alleged to satisfy each of the limitations of the asserted claim.  An inspection of those materials further indicates that Plaintiff points to *an actual bank and bank customers*, and not Cisco, as responsible for satisfying several elements of the charted system claim.  But infringement of a system claim cannot be divided between multiple parties.  In the absence of an allegation of infringement by a Cisco product, mCom's allegations of direct infringement must be dismissed with prejudice.

mCom's claims of indirect infringement, both inducement and contributory, and its claim for willful infringement, fare no better.  The Complaint contains no specific allegations to support mCom's claims of indirect infringement, but only conclusory statements.  And mCom fails to plead any pre-suit knowledge, as necessary to support a claim of willful infringement.  These claims must also be dismissed with prejudice.

## II.     LEGAL STANDARD

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is not plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*,

550 U.S. at 556). In making this assessment, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention…during the term of the patent." 35 U.S.C. § 271(a); Fed. R. Civ. P. 8(a); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). The Federal Circuit has recognized that its "cases have applied joint infringement to method claims and not system claims." *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Instead, "direct infringement by use of a system claim requires a party ... to use each and every ... element of a claimed system." *Centillion*, 631 F.3d at 1284 (internal quotation marks and brackets omitted); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017). "[T]o use a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id.* (internal quotation marks and citation omitted). With respect to method claims, the allegations must contain "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and

either (1) one party exercises the requisite 'direction or control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda*, 838 F.3d at 1339; *see also De La Vega v. Microsoft Corp.*, No. 6:19-cv-00612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (citing *Lyda*, 838 F.3d at 1339). When the complaint fails to allege that the defendant uses (for system claims) or controls (for method claims) each element of the claim, claims of direct infringement are not plausible and should be dismissed. *See De La Vega*, 2020 WL 3528411, at *7; *AlexSam, Inc. v. Aetna, Inc.,* No. 3:19-CV-01025 (VAB), 2020 WL 5502323, at *15 (D. Conn. Sept. 11, 2020).'

To succeed on a claim of induced infringement, a plaintiff must allege facts showing that defendant: (1) had actual knowledge of the patent; (2) actively and knowingly aided and abetted a third-party to directly infringe the patent; and (3) had specific intent and action to induce infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). The Supreme Court has held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Similarly, to succeed on a contributory infringement claim, Plaintiff must allege facts showing that defendant: (1) directly infringed, (2) had knowledge of the patent, (3) that the component has no substantial non–infringing uses, and (4) that the component is a material part of the invention. 35 U.S.C. § 271(c); *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677, at *6-7 (W.D. Tex. Nov. 28, 2017). Of course, a claim for either induced or contributory infringement also requires an underlying act of direct infringement. *See Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *5 (E.D. Tex.

3

Nov. 17, 2020) ("Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed.").

Finally, to demonstrate willful infringement, a plaintiff must show "[t]he sort of conduct warranting enhanced damages has been variously described ... as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016).  To sufficiently plead willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent."  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-209-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (citations omitted).

## III.    RELEVANT FACTS FROM THE COMPLAINT

mCom's Complaint alleges that Cisco "maintains, operates, and administers methods and systems of unified banking systems that infringe one or more claims" of U.S. Patent 8,862,508 ("the '508 patent").  *See* Dkt. 1. ¶ 8.  The Complaint does not name any actual Cisco product as infringing.  Instead, mCom's Complaint attaches an infringement chart that attempts to map system claim 13 of the '508 patent against several unrelated Cisco marketing documents.  The text of claim 13 is provided below, with relevant text bolded.

| preamble | 13. A **unified electronic banking system**, said system comprising: |
|----------|---------------------------------------------------------------------|
| (a) | a common multi-channel server, wherein said multi-channel server is communicatively coupled to **one or more independent computer systems**; |
| (b) | wherein each of one or more independent computer systems is associated with an independent financial institution, and each of said computer systems is communicatively coupled to said multi-channel server; |

| preamble | 13. A **unified electronic banking system**, said system comprising: |
|---|---|
| (c) | one or more **e-banking touch points**, each of which comprise one or more of an **automatic teller/transaction machine (ATM)**, a self-service coin counter (SSCC), a kiosk, a digital signage display, **an online accessible banking website**, a personal digital assistant (PDA), a personal computer (PC), a laptop, **a wireless device**, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; and |
| (d) | a data storage device, wherein transactional usage data associated with a transaction initiated by a user through one of said e-banking touch points is stored in said data storage device and accessed by one or more of said other e-banking touch points; |
| (e) | **wherein said active session is monitored via said server in real-time for selection of targeted marketing content** correlated to said user-defined preferences, **said targeted marketing content** correlated to said user-defined preferences is selected subsequent to said monitoring and **transmitted in real-time to at least one of said e-banking touch points for acceptance, rejection, or no response by a user**, and wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session. |

The preamble of claim 13 recites "[a] unified electronic banking system, said system comprising" several devices and functionalities addressed in subsequent limitations (a) through (e). For the preamble, Plaintiff's infringement chart relies on a single document, from 2008, entitled "Driving Business Value in Financial Services with *Unified Communications*." Ex. 1.

For elements (a) through (c), Plaintiff relies on a single image from a two-page document entitled "Cisco Omnichannel Banking," attached as Ex. 2 to this brief. Dkt. 1-1 at 6-8; Ex. 2. That image, captioned "Figure 1. Omnichannel Interaction Helps Optimize Revenue Capture," is shown below. Nothing in the figure or document states that Cisco provides mobile banking applications, banking websites, or any hardware that consumers use to access mobile banking applications or banking websites.

Figure 1. Omnichannel Interaction Helps Optimize Revenue Capture

Ex. 2 at 1.

Elements (a) and (b) recite a "multi-channel server" that is communicatively coupled to "independent computer systems," where "each . . . independent computer system is associated with an independent financial institution."   Dkt. 1-1 at 6.   To allege satisfaction of these elements, Plaintiff states that "Cisco's unified band platform communicatively couple's [sic] digital apps and **financial institutions** with their **multi-channel (omni-channel server)**," and through color-coding, identifies "**financial institutions**" as satisfying the portion of the limitation requiring "**independent computer systems**," where "**each . . . independent computer system is associated with an independent financial institution**."   *Id.*   This portion of Plaintiff's claim chart is shown below.   Similarly, through color-coding, mCom identifies something it calls an "omni-channel server," as supposedly satisfying the "multi-channel server" of the claim.   *Id.*



Dkt. 1-1 at 6.

Element (c) recites "one or more e-banking touch points," including an "automatic teller/transaction machine (ATM)," "an online accessible banking website," and "a wireless device." Plaintiff points to "an accessible banking website," "wireless devices," and "any other digital banking apps" as allegedly satisfying these structures, and points to the same Figure as used for limitation (a). Plaintiff specifically identifies portions of that image captioned "Home," "ATM," "Kiosk," and "Mobile" in Figure 1 by enclosing those portions with a green box (shown below).

7



Dkt. 1-1 at 7.

For element (e), Plaintiff relies on a fictional video in which a consumer engages in a transaction with their bank (named, "Francisco Bank") through the consumer's mobile phone. Dkt. 1-1 at 10-12 (link to video: https://www.cisco.com/c/en/us/solutions/industries/financial-services/retail-banking.html) (hereinafter "Video").  As the video explains, "[t]oday's consumers expect convenient access on digital channels to more of the products and *services their financial institutions offer*," and with Ex. 3 (transcript of Video) (emphasis added).  Excerpts from the video, which are not included in Plaintiff's claim chart, make clear that the fictional example relates to a mobile banking application provided by a bank, not Cisco.

 

Video at 40 seconds and 51 seconds.

## IV.   ARGUMENT

### A.   Plaintiff's Claim for Direct Infringement Should Be Dismissed

#### 1.   Plaintiff Makes No Plausible Allegation that Cisco Provides a "Unified Electronic Banking System" (Preamble)

With respect to the preamble, Plaintiff cites an excerpt from a 2008 document entitled "Driving Business Value in Financial Services with *Unified Communications*" for the proposition that Cisco provides a "unified electronic banking system." Ex. 1 (emphasis added). Page two of this document explains that Cisco Unified Financial Communication Solutions serve the generic goal of "*equip[ping] financial institutions* with the tools to improve real-time customer service capabilities." *Id*. at 2 (emphasis added). Nothing in this document states that Cisco provides a "unified banking system."

Instead, the cited document says that Cisco offers generic communications solutions that can be used by financial institutions, such as "presence management," "audio conferencing," and "IP telephony." *Id*. Although the excerpt states that "[t]he solution is designed, built, tested, managed, and offered as a unified system," the document makes clear that this statement is referring to a "unified *communication* system," not a unified *banking* system. *Id*. at 7-8. Therefore, Plaintiff "makes no factual allegations that even remotely suggest that" Cisco, a networking company, "makes, uses, offers to sell, or sells" a unified banking system. *Ruby Sands*

9

*LLC*, 2016 WL 3542430, at *4; *see also De La Vega*, 2020 WL 3528411, at *6-7; *Mosaic Brands v. Ridge Wallet LLC*, 2020 WL 5640233, at *4 (C.D. Cal. Sept. 3, 2020) (dismissing complaint for "failure to plausibly identify in the claim charts multiple limitations of Claim 1 of the [asserted patent.]").   As discussed below, because Cisco does not provide a "unified *banking* system," Plaintiff is forced to misrepresent various Cisco documents, and point to the activities of banks, not Cisco, in an attempt to satisfy several elements of claim 13.

  **2.**  **Plaintiff Makes No Plausible Allegation that Cisco Provides, as Part of a "Unified Electronic Banking System," a "Multi-Channel Server," That Is Communicatively Coupled to "Independent Computer Systems," where "Each . . . Independent Computer System Is Associated with an Independent Financial Institution."  (Limitation (a) and (b))**

  Plaintiff alleges that the claim limitation reciting a (i) "multi-channel server" that is communicatively coupled to (ii) "independent computer system(s)," where "each . . . independent computer system is associated with an independent financial institution," is satisfied by a (i) omni-channel server and (ii) computers of "financial institutions" respectively.  Dkt. 1-1 at 6.  For this limitation, mCom's infringement chart relies solely on a diagram that shows a person at the center of various communication technologies (e.g., email, voice, chat, SMS, mobile, etc.), and is entitled "Omnichannel *Interaction* Helps Optimize Revenue Capture."  *Id*. (referencing diagram from Ex. 1) (emphasis added).  Nothing in that diagram, or the underlying document, sets forth that Cisco provides a product called an "omni-channel *server*."  Ex. 1.  In fact, the word "server" does not even appear in the document mCom cites.  Ex. 1.  Plaintiff simply does not advance any plausible theory for this "multi-channel server," and this alone is fatal and requires mCom's complaint to be dismissed.  *See De La Vega*, 2020 WL 3528411, at *6-7.  And to the extent that mCom relies on its attempt to identify a "server" as satisfying this limitation, this "merely track[s] the claim language" and is "insufficient to give rise to a reasonable inference" of infringement.  *Vervain,*

*LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021) ); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[W]e do not credit conclusory allegations or allegations that merely restate the legal elements of a claim."). The facts alleged simply fail, in this Court's judgment, to "articulate why it is plausible that the accused product infringes the patent claim." *Vervain*, 2022 WL 23469, at *7 (citing *Bot m8 LLC*, 4 F4th at 1354).

Similarly, nothing that mCom points to states that Cisco maintains "independent computer system(s)," where "each . . . independent computer system is associated with an independent financial institution."[1] Cisco is not a financial institution, and the documents Plaintiff cites do not indicate that Cisco maintains any computers for financial institutions. Presumably, the computers of "financial institutions" are provided by those financial institutions. But various limitations of an apparatus claim cannot be provided by different parties – each of the limitations must be satisfied by a single infringer. *See Centillion*, 631 F.3d at 1288. Plaintiff does not advance any theory by which Limitations (a) and (b) can be satisfied by Cisco. *See Ruby Sands LLC*, 2016 WL 3542430 at *4.

3. **Plaintiff Makes No Plausible Allegation that Cisco Provides, as Part of a "Unified Electronic Banking System," "One or More E-Banking Touch Points," Including an "Automatic Teller/Transaction Machine (ATM)," "an Online Accessible Banking Website," and "a Wireless Device." (Limitation (c))**

Plaintiff alleges that the "automatic teller/transaction machine (ATM)," "online accessible banking website," and "wireless device" limitations of the claim are satisfied by "an accessible

---

[1] In fact, mCom's allegation for this limitation makes no mention of independent computer systems, let alone independent computer systems used by Cisco. Dkt. 1-1 at 6 (stating in conclusory fashion that "For example, Cisco's unified brand platform communicatively couple's digital apps and financial institutions with their multi-channel (omnichannel server.).").

banking website," "wireless devices," or "any other digital banking apps."  Dkt 1-1 at 7. But none of the documents cited by Plaintiff, including Ex. 2 – which they cite for this limitation – states that Cisco provides "an accessible banking website," "wireless devices," or "any other digital banking apps."  It is *ipse dixit*, and the court need not blindly accept such "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citation omitted).  In fact, while Plaintiff's cited document explains that "[t]oday's banking customers want to access expertise and support on their terms - in a branch, online, at a kiosk, on a mobile phone, or through a call to the contact center," it also explains that "*banks* must provide this type of omnichannel experience."  Ex. 2 at 1.  Cisco is not a bank, and this document is talking about parties other than Cisco, i.e., banks, providing touch points for banking services.

Moreover, Figure 1, which Plaintiff cites, does not state that Cisco provides any of the elements that Plaintiff has explicitly identified with a green box: the "Home," "ATM," "Kiosk," or "Mobile" (i.e., mobile phone) components.  Instead, the document states that "Cisco support for Omnichannel Banking *helps your institution*," i.e., banks (or some institution that is not Cisco), and "expand[s] customer interactions to multiple channels to enjoy a variety of business benefits, through" various "customer-interaction channels, including social media, mobile banking, and branches." Ex. 1 at 2.  Thus, the elements identified by Plaintiff – "Home," "ATM," "Kiosk," and "Mobile" (i.e., mobile phone) are provided by banks and banking customers – not Cisco.  Such a claim, where multiple actors contribute pieces to a system, is not a plausible claim for direct infringement.  *See Centillion*, 631 F.3d at 1288.  The documents themselves demonstrate that mCom has no plausible direct infringement allegation, and that claim should be dismissed with

prejudice because amendment would be futile.  *See De La Vega*, 2020 WL 3528411, at *6-7;  *Ruby Sands LLC*, 2016 WL 3542430, at *4.

> ### 4.      Plaintiff Makes No Plausible Allegation that Cisco Provides "Targeted Marketing Content." (Limitation (e))

Plaintiff's claim chart generically parrots the claim language by stating that "Cisco's omni-channel banking platform allows for real-time targeted marketing content."  Dkt. 1-1 at 10.  In support of this proposition, Plaintiff points to a mobile banking application on a consumer's phone, as shown in a fictional video from the Cisco website.  *Id*.  The portions of the video that Plaintiff declines to cite, however, demonstrate that any such application for targeted advertising is provided by a bank and not Cisco.  Video at 40 seconds and 51 second; Ex. 3 at 1 (discussing "mobile banking app").  Plaintiff has no basis to allege that Cisco provides any such mobile banking application, and none of the documents cited in Plaintiff's claim chart support any such allegation.  In fact, the video specifically states that "[u]sing the 'notarize a document' feature on her mobile banking app, [the customer] selects the document she needs notarized and uploads a photo of the deed," and *"[t]he bank's system assigns Julia's request to . . . a notary."*  *Id*.  The video explains that Cisco could make a singular contribution to this fictional scenario—to facilitate a video conference notary service by "auto-schedul[ing] the video notary meeting," helping the bank keep the process on track, and allowing the customer to engage in a remote notarization process through WebEx videoconference.  *Id*.  Nothing in the video, or any plausible allegation in Plaintiff's Complaint, indicates that Cisco is responsible for providing the mobile application that Plaintiff alleges is responsible for the "targeted marketing content" or having that "targeted marketing content . . . transmitted in real-time."  And, once again, a claim of direct infringement of an apparatus claim cannot be supported when different parties satisfy different elements of the claim.  *Centillion*, 631 F.3d at 1288.  Therefore, Plaintiff has no plausible allegation for the

"targeted marketing content" limitation, and its claim must be dismissed.  *De La Vega*, C.A. 2020 WL 3528411, at \*4-7.  *See Ruby Sands LLC*, 2016 WL 3542430, at \*4.

### B.    Plaintiff's Claims for Indirect Infringement Should be Dismissed[2]

Because Plaintiff has failed to raise a plausible direct infringement claim, its indirect infringement claim must be also dismissed.  *See De La Vega*, 2020 WL 3528411,, at \*7; *see also Qwikcash,* 2020 WL 6781566, at \*5.  Further, Plaintiff has not pled any of the allegations necessary to support a claim of induced or contributory infringement.  For example, Plaintiff has not alleged any facts that Cisco "actively and knowingly" aided a third party to directly infringe, or had a "specific intent" to induce infringement.  *DSU Med. Corp.*, 471 F.3d at 1305.  In fact, the totality of Plaintiff's allegation is a conclusory statement that Cisco "has actively encouraged or instructed others . . . on how to construct a unified banking system."  Dkt. 1, ¶ 10.  Plaintiff does not provide any specifics to support this allegation, and it is therefore insufficient to support a claim of induced infringement.  *See Parity Networks*, 2019 WL 3940952, at \*2 (explaining that to adequately plead a claim of induced infringement a plaintiff must allege "a specific intent to induce infringement, which is 'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (quoting *DSU Med. Corp.*, 471 F.3d at 1306); *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, No. 5:11-cv-163-XR, 2013 WL 2453267, at \*5 (W.D. Tex. June 4, 2013) (stating that "guidance regarding the pleading requirements for indirect infringement, a court must look to *Twombly* and *Iqbal*" that "requires

---

[2] The parties have met and conferred consistent with the Order Governing Proceedings, and Plaintiff has agreed to drop any allegation of pre-suit indirect infringement or willfulness without prejudice.

14

that the alleged infringer . . . possessed specific intent to encourage another's infringement") (internal citation excluded).

Similarly, Plaintiff alleges that Cisco "has and continues to contributorily infringe," and that Cisco "actively encouraged or instructed others . . . on how to use its products and services." Dkt. 1, ¶ 11.  But Plaintiff fails to allege that Cisco had "knowledge that the component is especially designed for use in a patented invention." *See Parity Networks*, 2019 WL 3940952, at *2 (quoting *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010)).  In fact, the Complaint fails to identify any specific Cisco product that supposedly contributes to infringement.  Similarly, Plaintiff does not allege that any Cisco product (i) lacks substantial non-infringing uses or (ii) is a material part of the invention, as required to plead a claim of contributory infringement.  *See Iron Oak Techs.,*  2017 WL 9477677, at *6.

Claims of indirect infringement based on "bald conclusions" couched as facts, as Plaintiff offers for both induced and contributory infringement, should be dismissed.  *Hypermedia Navigation LLC v. Google LLC*, No. 18-cv-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. April 2, 2019) ("[T]he complaint only states bald conclusions that an end user following YouTube instructions results in infringement…  In no way does the complaint detail *how* an end user would infringe Hypermedia's patents.") (emphasis in original).

## V.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court dismiss mCom's Complaint with prejudice for failure to state a claim.

Dated: May 16, 2022                                    Respectfully submitted,


                                                       By: */s/* Krishnan Padmanabhan
                                                            Krishnan Padmanabhan (*Pro Hac Vice*)
                                                            kpadmanabhan@winston.com

Winston & Strawn LLP
200 Park Ave.
New York City, NY 10166
Tel: (212) 294-6700

Barry Shelton
State Bar No: 24055029
bshelton@winston.com
Winston & Strawn LLP
2121 N. Pearl Street
Suite 900
Dallas, TX 75201
Tel: (214) 453-6407

William Logan
State Bar No: 24106214
wlogan@winston.com
Winston & Strawn LLP
800 Capitol St
Ste 2400
Houston, TX 77002-1090
Tel: (214) 453-6407

*Attorneys for Defendant,*
*Cisco Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 16, 2022, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system which will provide notice of the same to all counsel of record.

_/s/ Krishnan Padmanabhan_

Krishnan Padmanabhan