## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE WESTERN DISTRICT OF TEXAS</u>
## <u>WACO DIVISION</u>

MCOM IP, LLC,

     Plaintiff,

     v.

CISCO SYSTEMS, INC.,

     Defendant.

Case No. 6:22-cv-00261-ADA

## CISCO SYSTEMS, INC.'S MOTION TO DISMISS MCOM IP, LLC'S AMENDED COMPLAINT
## <u>PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD.......................................................................................... 3

III.  RELEVANT FACTS FROM THE COMPLAINT............................................. 5

IV.   ARGUMENT ...................................................................................................... 11

      A.   Plaintiff's claim for direct infringement should be dismissed. ............. 11

           1.    mCom fails to plausibly allege joint infringement of system claims 13, 14, and 17................................................................................. 11

           2.    mCom fails to plausibly allege joint infringement of method claims 1-3, 5,  and 7-8. ......................................................................... 12

           3.    mCom fails to identify a Cisco product or functionality that has a "common multi-channel server coupled to more than one e-banking touch points." (Claim 1, limitation (a)).......................................... 13

           4.    mCom fails to identify a Cisco product or functionality that is capable of "receiving an actionable input from at least one e-banking touch point." (Claim 1, limitation (b)).................................................. 14

           5.    mCom fails to identify a Cisco product or functionality that is capable of "monitoring via said server an active session in real time for selection of targeted marketing content correlated to said user-defined preferences." (Claim 1, limitation (f)) ...................................... 14

      B.   The Court dismissed mCom's indirect infringement claims. .............. 16

      C.   mCom should not be permitted to replead............................................ 16

V.    CONCLUSION................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
No. 3:19-CV-01025 (VAB), 2020 WL 5502323 (D. Conn. Sept. 11, 2020)............................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................3, 4

*Bot M8 LLC v. Sony Corp.*,
4 F.4th 1342 (Fed. Cir. 2021) ...........................................................................................13

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012) ..............................................................................................3

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*,
631 F.3d 1279 (Fed. Cir. 2011).............................................................................4, 11, 17

*Chhim v. Univ. of Tex. at Austin*,
836 F.3d 467 (5th Cir. 2016) ............................................................................................13

*De La Vega v. Microsoft Corp.*,
No. 6:19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ....................*passim*

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
870 F.3d 1320 (Fed. Cir. 2017)............................................................................................4

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ..............................................................................................3

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016).............................................................................4, 12, 14, 17

*Mosaic Brands v. Ridge Wallet LLC*,
2020 WL 5640233 (C.D. Cal. Sept. 3, 2020) .....................................................................15

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)....................................4, 15

*Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563 (5th Cir. 2003) ............................................................................................16

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .................................13

**Statutes**

35 U.S.C. § 271(a) ....................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 8(a) ..................................................................................................................4

https://www.cisco.com/c/dam/en_us/solutions/industries/docs/finance/omnichann
   el-banking-achitecture.pdf ...................................................................................................7

https://www.cisco.com/c/en/us/about/legal/privacy-full.html ...............................................10, 15

https://www.cisco.com/c/en/us/solutions/industries/financial-services/retail-
   banking.html .......................................................................................................................9

U.S. Patent No. 8,862,508 .....................................................................................................5, 18

## I.      INTRODUCTION

On September 29, 2022, Defendant Cisco Systems Inc. appeared before this Court and argued that mCom's Original Complaint (the "Original Complaint") should be dismissed. Dkt. 44 (Hearing Transcript). At the hearing, Cisco explained how mCom's pleading was a patchwork of Cisco marketing documents that did not identify any specific product or functionality that practices the limitations of the patent-in-suit. The Court agreed. *Id.* at 16 (The Court: "I don't find what [mCom has] given to Cisco to be adequate."). Granting mCom leave to amend, the Court provided clear guidance regarding the factual allegations mCom needed to include in an amended pleading, or otherwise it would risk dismissal with prejudice of this action. Dkt. 44 at 17-19 (The Court: "[L]et me make clear, if we have to address this – if we have to address this again, probably the motion to dismiss will – might have more finality to it.").

mCom's First Amended Complaint (the "Amended Complaint") attaches a revised infringement chart as Exhibit A. These new contentions do not solve the problems identified in Cisco's motion to dismiss mCom's Original Complaint, namely that: (1) mCom did not identify specific Cisco products or functionalities that practice the limitations in the asserted claims, and (2) mCom alleges that multiple actors are required to perform all the steps of the asserted claims, but does not plead a plausible claim for joint infringement.[1]

---

[1] Not only did mCom not heed the instruction of this Court—it appears that mCom does not recall its own representations to the Court. For example—after Cisco argued that mCom's indirect infringement claims in the Original Complaint were based on conclusory allegations, mCom's counsel voluntarily offered to withdraw those claims and await fact discovery to discern whether there is a colorable basis to assert them. Dkt. 22 at 20 (mCom's Counsel: "I think that the – more in line with the Court's recent rules of practice, we would be happy, if the defendant's okay, to dismiss those allegations pending the discovery[.]"). The Court agreed and dismissed the indirect infringement claims without prejudice. *Id.* Despite mCom's representation and the Court's order,

The patent-in-suit is entitled "System and method for unifying e-banking touch points and providing personalized financial services." Dkt. 1-2 at 1. As Cisco emphasized at the hearing – Cisco is not a bank. It does not have banking customers and does not provide financial services. It is a technology company that manufactures and sells networking hardware, software, and telecommunications equipment and offers other technology services to a variety of industries. Because Cisco does not provide banking services, mCom is forced to concede in its contentions that a bank—and not Cisco—performs certain limitations of the asserted claims.

In the claim chart attached to the Original Complaint, mCom mapped the limitations of claim 13, which is a system claim. As Cisco pointed out in its motion to dismiss that complaint, a party cannot allege divided infringement of a system claim. In the claim chart attached to the Amended Complaint, mCom again asserted claim 13, and added new method claims, including Claim 1. Yet Claim 1, as do the other newly-pleaded method claims, require multiple actors— namely Cisco, a bank, and banking customers—to perform the steps of the claimed methods. But mCom did not plead any allegations in the Amended Complaint to support a claim for joint infringement with respect to the method claims, which requires a showing of direction and control by one party over the other, or a joint enterprise. And mCom has still not explained how Cisco and a bank could jointly infringe claim 13, a system claim, when that is contrary to black letter law.

mCom's Amended Complaint, and attached claim chart, is no more than a haphazard, last-ditch attempt to satisfy the *Iqbal / Twombly* pleading standard. In a hasty effort to avoid dismissal, mCom patches together unrelated screenshots of online material, with conclusory narrative that tracks the claim language. But mCom's contentions still fail to identify any actual Cisco product

---

mCom's Amended Complaint once again includes the same conclusory allegations of indirect infringement offered in the Original Complaint.

that allegedly practices all the elements of these claims. Indeed, mCom still relies on fictional videos depicting products that would be offered by *banks, and not Cisco*, and now includes screenshots from other companies' websites, including Shopify and Market Evolution.

Cisco pointed out the inherent deficiency in mCom's allegations in its motion to dismiss mCom's Original Compliant. The Court gave mCom the requested amount of time to try and cure those deficiencies. Dkt. 44 at 19 (The Court: "So if you need four weeks, I'd rather give you four weeks than have you say what you did was inadequate because you didn't have enough time. So you have four weeks."). Rather than make any genuine effort, mCom has simply doubled down and refused to correct the inadequacies recognized by this Court. mCom's failure to sufficiently plead its case is an admission that it had no plausible basis to bring this case to begin with. Accordingly, mCom's Amended Complaint should be dismissed with prejudice and it should not be permitted a third opportunity to replead.

## II.    LEGAL STANDARD

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In making this assessment, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir.

3

2012). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention…during the term of the patent." 35 U.S.C. § 271(a); Fed. R. Civ. P. 8(a); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). The Federal Circuit has recognized that its "cases have applied joint infringement to method claims and not system claims." *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Instead, "direct infringement by use of a system claim requires a party ... to use each and every ... element of a claimed system." *Centillion*, 631 F.3d at 1284 (internal quotation marks and brackets omitted); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017). "[T]o use a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id*. (internal quotation marks and citation omitted).

With respect to method claims, the allegations must contain "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda*, 838 F.3d at 1339; *see also De La Vega v. Microsoft Corp.*, No. 6:19-cv-00612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (citing *Lyda*, 838 F.3d at 1339). When the complaint

fails to allege that the defendant uses (for system claims) or controls (for method claims) each element of the claim, claims of direct infringement are not plausible and should be dismissed. *See De La Vega*, 2020 WL 3528411, at *7; *AlexSam, Inc. v. Aetna, Inc.,* No. 3:19-CV-01025 (VAB), 2020 WL 5502323, at *15 (D. Conn. Sept. 11, 2020).

## III.    RELEVANT FACTS FROM THE COMPLAINT

U.S. Patent No. 8,862,508 ("the '508 patent") describes a purported invention for a "system and method for delivering a retail banking multi-channel solution that unifies interactive electronic banking touch points to provide personalized financial services to customers and a common point of control for financial institutions[.]" Dkt. 1-2 at 1. mCom alleges that Cisco "maintains, operates, and administers methods and systems of unified banking systems that infringe one or more claims of the '508 patent, including one or more of claims 1-20[.]" Dkt. 43. In support of this statement, mCom attaches a claim chart to its Amended Complaint for several claims, including claim 1, which is a method claim.

In relevant part, claim 1 recites:

| preamble | 1. A **method for constructing a unified electronic banking environment**, said method comprising the steps of: |
|---|---|
| (a) | providing at least one **common multi-channel server coupled to more than one e-banking touch points** and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, and further wherein said more than one plurality of **e-banking touch points are comprised of at least two different types of e-banking touch point devices, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device,** or a combination of two or more thereof, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server. |

| preamble | 1. A **method for constructing a unified electronic banking environment**, said method comprising the steps of: |
|----------|----------------------------------------------------------------------------------------------------------------|
| (b) | **receiving an actionable input from at least one e-banking touch point**; . . . |
| (f) | monitoring via said server an active session in real-time for selection of **targeted marketing content correlated to said user-defined preferences**[.] |

For limitation (a), mCom uses the following graphic from Cisco's website in an effort to demonstrate that "Cisco's Digital Banking Environment has a Multi-channel server to interact with multiple touchpoints such a [sic] ATM, Mobile, PC, Kiosk for a given customer":



Dkt. 43-1 at 5.[2] Although mCom capitalizes the phrase "Digital Banking Environment" as if it is a known Cisco product—that term does not appear anywhere in the document that contains this graphic. Indeed, the document is a one-page Cisco marketing pamphlet titled "Cisco Omnichannel

---

[2] Page 5 (and all other page references to this document) is the ECF page 5. Exhibit A to mCom's Amended Complaint has page numbering that skips pages.

Banking" that abstractly discusses how "[t]oday's banking customers want to access expertise and support on their terms – in a branch, online, at a kiosk, on a mobile phone, or through a call to the contact center" and then promotes Cisco's "portfolio" of communications tools and "ecosystem offerings" that "support[] Omnichannel interaction between retail and business customers[.]"[3] mCom's Amended Complaint, however, does not identify any one such specific tool within Cisco's "ecosystem offerings" or map the functionalities of any such tool to limitation (a). This is not surprising, since mCom's deficient Original Complaint relied heavily upon this same document.

Rather, mCom solely relies on the above graphic to purportedly show Cisco has a "common multi-channel server coupled to more than one e-banking touch points." The graphic itself is captioned "Omnichannel Interaction Helps Optimize Revenue Capture" and depicts a "customer" who is surrounded by various communication channels, including an ATM, phone, kiosk, and email. Yet mCom does not, and cannot, allege that Cisco itself—as opposed to a bank—maintains or operates such "e-banking touch points" as an ATM or kiosk. mCom likewise does not, and cannot, allege that Cisco maintains or operates a server that connects or couples these various "e-banking touch points." mCom previously relied on this graphic in the Original Complaint, and Cisco likewise argued then why it was insufficient to allege this limitation. Dkt. 44 at 8 (Cisco's Counsel: "So mCom uses this graphic to try to show that Cisco has these e-banking touch points. But this document does not actually say that Cisco provides these things. Again, this graphic is

---

[3]    mCom's    Claim    Chart    at    Dkt    43-1    at    5,    citing    to: https://www.cisco.com/c/dam/en_us/solutions/industries/docs/finance/omnichannel-banking-achitecture.pdf.

just intended to convey to a bank that optimizing the channel for a consumer to interact with the bank is a positive thing.").

Rather than point to a Cisco "common multi-channel server" that Cisco operates and maintains, mCom cites to two non-Cisco articles—one from tech company Marketing Evolution's website, and the other from software company Shopify's website—broadly discussing the concept of "multi-channel." Dkt. 43-1 at 5. As mCom's claim chart states, "Multi-channel banking allows Financial Institutions to 'leverage multiple channels[']" and then cites to those two articles:

| providing at least one **common multi-channel server** **coupled to more than one e-banking touch points** and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, | For example, Cisco's Digital Banking platform communicatively couple's <u>digital devices</u> and <u>financial institutions</u> with their (**multi-channel server.**)<br><br>Multi-channel banking allows Financial Institutions to "**leverage multiple channels** that allows brands to interact with their customers **across multiple touchpoints**"<br>https://www.marketingevolution.com/marketing-essentials/what-is-multi-channel-marketing<br>https://www.shopify.com/ca/enterprise/omni-channel-vs-multi-channel#:~:text=What%20is%20the%20difference%20between,and%20revolves%20around%20your%20product.<br><br><u>**Cisco's Digital Banking Environment**</u> has a **Multi-channel server** to interact with **multiple touchpoints such a ATM, Mobile, PC, Kiosk** for a given customer. |

*Id.* These industry articles, however, are wholly insufficient to allege *that Cisco* has a product or functionality that constitutes a "multi-channel server" as required by limitation (a).

For limitation (b), mCom uses the following screenshot from a Cisco online video to attempt to show that "Cisco's Digital Banking platform enables Cisco's Customer to log into their

account with a Mobile device or PC, click on the auto loan, check a balance, or can sort through banking entries (which are all actionable inputs)":



Dkt. 43-1 at 9.[4] Once again, mCom relied on this video in the Original Complaint. Dkt. 1-1 at 10-12. Cisco explained then, as it does now, that this video depicts a fictional, cartoon banking customer *logging into her bank's mobile app that is owned or maintained by the bank—not Cisco*. Dkt. 44 at 8-9 (Cisco's Counsel: "mCom uses this video that's on a Cisco website…this video says the bank's products and services are being offered by the customer's financial institution. Not Cisco."). mCom provides no plausible allegation to explain how this video shows that any Cisco product or service satisfies this limitation.

---

[4]     mCom's Claim Chart at Dkt. 43-1 at 9, citing to: https://www.cisco.com/c/en/us/solutions/industries/financial-services/retail-banking.html.

For limitation (f) ("selection of targeted marketing content correlated to said user-defined preferences"), mCom solely relies on a screenshot of the Cisco Online Privacy Statement located on its website that "applies to Cisco websites and Solutions…and describes how we handle Personal Information[.]"[5]



This generalized Privacy Statement contains no mention of any Cisco product or service, let alone any product or service that supposedly practices the steps of claim 1. mCom does not even separately identify a specific Cisco product or functionality and then explain how the Privacy Statement might apply. At most, mCom relies on the Privacy Statement's blanket statement that, "Like many websites and web-based Solutions, Cisco uses automatic data collection tools, such as cookies…[that] collect certain standard information[.]" *Id*. This statement does not indicate that Cisco offers or maintains any specific product that "monitors customer activity in real time using

---

[5]    mCom's   Claim   Chart   at   Dkt.   43-1   at   14,   citing   to: https://www.cisco.com/c/en/us/about/legal/privacy-full.html.

Cookies and promotes products specific to each customer," in any supposed banking systems, as mCom alleges. *Id*.

## IV.    ARGUMENT

### A.    Plaintiff's claim for direct infringement should be dismissed.

#### 1.    mCom fails to plausibly allege joint infringement of system claims 13, 14, and 17.

mCom's Original Complaint relied on a single system claim, claim 13. mCom's Amended Complaint continues to assert claim 13, and also asserts claims 14 and 17 which depend from claim 13. As Cisco argued in its motion to dismiss briefing and at the hearing, mCom's allegations for claim 13 required that multiple actors—namely, Cisco, a bank, and banking customers—contribute pieces to the purported system, which is not a plausible claim. *See Centillion*, 631 F.3d at 1288. The Court indicated at the hearing that mCom's amended pleading needed to overcome this potentially fatal issue. Dkt. 44 at 23 (The Court: "I certainly appreciate the issues that [mCom] has with divided infringement in this case….[mCom]'s told me that in four weeks, [it will] get [Cisco] a complaint that…will provide a foundation for the lawsuit."). mCom's amended Complaint, however, still alleges infringement of claim 13 by pointing to the actions of multiple parties. *See, e.g.*, Dkt. 43-1 (mCom's Claim Chart) at 37 ("Customers can access their banking at home, from a cell phone, or from an ATM and the customer does not have to be in the same location as the Financial institution[']s computer system."); *see id.* at 43 ("Cisco promotes advertisements or offers, to customers when they log in to their bank accounts using a digital banking device. When the customer logs in to their account, they can see an auto loan promotion for 2.9%."). The Court, therefore, must dismiss any allegations with respect to asserted system claims 13, 14, and 17.

> **2.     mCom fails to plausibly allege joint infringement of method claims 1-3, 5,  and 7-8.**

In its Amended Complaint, mCom added method claims 1-3, 5, and 7-8. A review of the problems with the allegations of method claim 1 are exemplary of the deficiencies across each of these claims, and are addressed in the next sections.

Like system claim 13, mCom alleges infringement of method claim 1 on the basis that a third-party bank, or its banking customers, practice several of the limitations, while certain unspecified Cisco products supposedly practice others. To adequately plead joint infringement of method claims, the allegations in the complaint must contain "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda*, 838 F.3d at 1339; *see also De La Vega*, 2020 WL 3528411 at *4 (citing *Lyda*, 838 F.3d at 1339). mCom provides no allegation with respect to either direction and control, or a joint enterprise. Why? Because no such allegation is plausible. Cisco does not direct banks to use any alleged "e-banking touchpoints" – for which mCom has accused as ATMs, Mobile, PC, Kiosk. *See* Dkt. 43-1 at 5. Cisco does not provide the mobile applications or websites that banking customers log into, or to which data is delivered. *See* Dkt. 43-1 at 9 (for "receiving an actionable input …," mCom points to a banking customer logging into a user account); *id*. at 12 (for "delivering said retrieved data …," mCom points to a mobile app provided by a bank).  In fact, for this limitation, mCom points to the same video as the Original Complaint, which Cisco explained discusses actions that a banking customer would undertake with a mobile application *provided by a bank, and not Cisco*. In short, mCom has failed to make even the faintest effort to plausibly allege joint infringement.

**3.    mCom fails to identify a Cisco product or functionality that has a "common multi-channel server coupled to more than one e-banking touch points." (Claim 1, limitation (a))**

For limitation (a) of claim 1, mCom's claim chart relies solely on a diagram that shows a person at the center of various communication technologies (e.g., email, voice, chat, SMS, mobile, etc.) and is entitled "Omnichannel Interaction Helps Optimize Revenue Capture." Dkt. 43-1 at 5. Nothing in that diagram, or the underlying document, sets forth that Cisco provides a product called an "common multi-channel server." In fact, the word "server" does not even appear in the document mCom cites. Instead, mCom cites to two articles from other technology companies— Marketing Evolution and Shopify—that broadly discuss the idea of "multi-channel." Dkt. 43-1 at 5. Cisco is mentioned nowhere in those Marketing Evolution and Shopify documents.

Plaintiff simply does not advance any plausible theory for this "multi-channel server," and, as Cisco argued in its first motion to dismiss, this alone is fatal and requires mCom's complaint to be dismissed. *See De La Vega*, 2020 WL 3528411, at *6-7. To the extent that mCom simply states, in conclusory fashion, that this graphic somehow represents a "server" and thus satisfies this limitation, this "merely track[s] the claim language" and is "insufficient to give rise to a reasonable inference" of infringement. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021) ); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[W]e do not credit conclusory allegations or allegations that merely restate the legal elements of a claim.").

Further, the elements identified by Plaintiff as "e-banking touch points," including an "ATM" and "Kiosk," are provided by banks – not Cisco. The customer in the middle of the graphic accessing those touch points are customers of the bank – not Cisco. Such a claim, where multiple

actors contribute pieces to a system, requires additional allegations, including either direction or control by one party over the other, or a joint enterprise, to rise to the level of a plausible claim for direct infringement. *Lyda*, 838 F.3d at 1339; *see also De La Vega*, 2020 WL 3528411 at *4 (citing Lyda, 838 F.3d at 1339). mCom failed to allege those necessary elements in its Amended Complaint.

>   **4.    mCom fails to identify a Cisco product or functionality that is capable of "receiving an actionable input from at least one e-banking touch point." (Claim 1, limitation (b))**

mCom relies on a screenshot from a Cisco video to attempt to show Cisco offers a product or functionality that is capable of "receiving an actionable input from at least one e-banking touch point." Dkt. 43-1 at 9. But this video—a cartoon video depicting a fictional banking customer accessing her mobile app—does not identify a Cisco-provided product. To the contrary, the video depicts a hypothetical bank's mobile banking app, and explains—at most—how Cisco has video-conferencing and scheduling capabilities that can be incorporated for use *with a bank's mobile application*, to connect a customer remotely with a banking representative. mCom's allegations do not identify any specific functionality *within* the video-conferencing and scheduling tools that practice the elements of limitation (b). Nor does mCom allege any facts necessary to establish joint infringement of this claim by Cisco, a bank, and the banking customer. *Lyda*, 838 F.3d at 1339; *see also De La Vega*, 2020 WL 3528411 at *4 (citing *Lyda*, 838 F.3d at 1339). Accordingly, mCom has failed to plausibly allege infringement of this claim.

>   **5.    mCom fails to identify a Cisco product or functionality that is capable of "monitoring via said server an active session in real time for selection of targeted marketing content correlated to said user-defined preferences." (Claim 1, limitation (f))**

As noted previously, mCom fails to allege any specific Cisco "server" that meets the limitations of claim 1. mCom further fails to allege that any such server is capable of "monitoring"

for selection of certain "targeted marketing content" that is unique to a user's defined preferences. Rather than point to any specific Cisco functionality, Cisco cites to its Online Privacy Statement, which can be found on its website under the "Cisco Legal" tab. The statement describes how Cisco is "committed to maintaining strong protections for [its] customers, products and company."[6] It does not cite to any specific product or Cisco functionality—much less any functionality capable of selecting "targeted marketing content" for a banking customer. Generalized statements regarding maintenance of a website user's privacy are clearly insufficient to plausibly allege a specific claim limitation related to targeted advertising.

In an attempt to track the claim language, mCom points to the Privacy Statement's section on "Use of cookies and similar technologies," which states: "Like many websites and web-based solutions, Cisco uses automatic data collection tools, such as cookies[.]" *Id*. But mCom fails to articulate why a website's collection of cookies—done routinely by many websites, not just Cisco's—meets the specific elements of limitation (f). mCom likewise fails to articulate that Cisco collects such cookies to generate targeting marketing content, let alone for banking customers. Rather, mCom concedes that the bank—and not Cisco—generates such marketing content. As an example of such content, mCom refers to the banking customer's mobile app and describes an "auto loan offer that is displayed along with their banking information[.]" Dkt. 43-1 at 14.

In short, Plaintiff "makes no factual allegations that even remotely suggest that" Cisco "makes, uses, offers to sell, or sells" a product or functionality that is capable of monitoring for the selection of targeted marketing content correlated to user-defined preferences. *Ruby Sands LLC*, 2016 WL 3542430, at *4; *see also De La Vega*, 2020 WL 3528411, at *6-7; *Mosaic Brands*

---

[6]    mCom's    Claim    Chart,    Dkt.    43-1    at    14,    citing    to: https://www.cisco.com/c/en/us/about/legal/privacy-full.html.

*v. Ridge Wallet LLC*, 2020 WL 5640233, at \*4 (C.D. Cal. Sept. 3, 2020) (dismissing complaint for "failure to plausibly identify in the claim charts multiple limitations of Claim 1 of the [asserted patent.]"). This inadequate pleading is symptomatic of the factual deficiencies underlying the Amended Complaint and demonstrates why it should be dismissed.

**B.**      **The Court dismissed mCom's indirect infringement claims.**

mCom's original complaint did not plead any of the allegations necessary to support a claim of induced or contributory infringement. *See* Dkt. 17 (Cisco's Motion to Dismiss) at 18-19. At the motion to dismiss hearing, Cisco emphasized that mCom's indirect infringement allegations were conclusory and lacked the factual allegations to support the requisite elements. mCom's counsel then volunteered "to dismiss those allegations pending the discovery" and the Court accordingly dismissed the indirect infringement claims. Dkt. 44 at 20. Nevertheless, mCom retained those allegations in its amended pleading, and ignored the Court's instruction that mCom await fact discovery to discern whether sufficient facts exist to plead such claims. Because the claims were already dismissed, and mCom has adduced no new or additional facts since the Original Complaint, the Court should re-dismiss the indirect infringement claims without any need to further evaluate those claims.

**C.**      **mCom should not be permitted to replead.**

mCom made virtually no effort to amend its pleadings, despite being given four weeks by this Court to cure the deficiencies addressed by Cisco. Indeed, mCom's Amended Complaint (excluding Exhibit A) is identical to the Original Complaint, which alone should warrant dismissal with prejudice of this action. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568-569 (5th Cir. 2003) (affirming dismissal with prejudice of a complaint where the amended complaint was "simply a re-write" of the prior complaint). Rather than refine its complaint, mCom added a

patchwork of new infringement contentions and screenshots from various Cisco marketing documents in its attached claim chart.

At the motion to dismiss hearing, the Court made clear that mCom needed to adequately amend its pleadings, including the attached claim chart, or else risk dismissal of its case. Dkt. 44 at 17 (The Court: "[L]et me make clear, if we have to address this – if we have to address this again, probably the motion to dismiss will – might have more finality to it[.]"). As Cisco argued at the hearing, and as the Court seemed to agree, mCom's reliance on certain Cisco marketing material was not sufficient to show which parts of specific Cisco products or functionalities that mCom alleges practice the limitations of the asserted claims. Dkt. 44 at 12-13. mCom's Amended Complaint is no different: again, mCom attached a claim chart that cobbles together a myriad of screenshots from Cisco marketing materials and Privacy Statement, and does not identify a specific Cisco product with specific functionalities that practice the allegedly infringed claims.

Further, mCom has failed to overcome the divided infringement issues presented by its own infringement contentions. Dkt. 44 at 23 (The Court: "I certainly appreciate the issues that [mCom] has with divided infringement in this case….[mCom]'s told me that in four weeks, [it will] get [Cisco] a complaint that…will provide a foundation for the lawsuit."). As to the system claims alleged, mCom cannot plausibly allege those claims under the Federal Circuit's holding in *Centillion* because they require multiple actors. *See Centillion*, 631 F.3d at 1288. And as to the method claims alleged, mCom relies on the acts of multiple entities as allegedly performing the steps of the claimed method—and yet fails to make even conclusory allegations to support a claim for joint infringement, such as the direction or control by one party over the other, or a joint enterprise. *See De La Vega*, 2020 WL 3528411 at *4 (citing *Lyda*, 838 F.3d at 1339).

17

mCom had ample notice of these issues, but still failed to make a plausible case in its Amended Complaint. mCom's patchworked pleading is an admission that mCom cannot prove that either Cisco alone, or jointly, directly infringes the claims of the '508 patent. Accordingly, it would be futile to permit mCom a third opportunity to replead, and the Court should dismiss with prejudice this action.

## V.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court dismiss with prejudice mCom's Amended Complaint (Dkt. 43) for failure to state a claim.

Dated: November 8, 2022                    Respectfully submitted,


By: */s/* K. Padmanabhan
    K. Padmanabhan
    kpadmanabhan@winston.com
    Winston & Strawn LLP
    200 Park Ave.
    New York City, NY 10166
    Telephone: (212) 294-6700

    Alex Wolens
    Texas Bar No. 24110546
    awolens@winston.com
    Winston & Strawn LLP
    2121 N. Pearl Street, Suite 900
    Dallas, TX 75201
    Telephone: (214) 453-6500
    Fax: (214) 453-6400

    Barry Shelton
    bshelton@winston.com
    Winston & Strawn LLP
    2121 N. Pearl Street
    Suite 900
    Dallas, TX 75201
    Telephone: (214) 453-6407

    *Attorneys for Defendant,*
    *Cisco Systems, Inc.*

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of this document was forwarded to all counsel of record through the Court's CM/ECF System on November 8, 2022.

*/s/ K. Padmanabhan*
K. Padmanabhan
