**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

MCOM IP, LLC,
          PLAINTIFF,

    V.                                **CASE NO.  6:22-CV-00261-ADA**

CISCO SYSTEMS, INC.,
          DEFENDANT.           **JURY TRIAL DEMANDED**

**RESPONSE TO CISCO SYSTEMS, INC.'S MOTION TO DISMISS MCOM IP, LLC'S**
**AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**
**FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.    ARGUMENT ..................................................................................................1

    a.   Plaintiff properly pleads a case for direct infringement ....................................1

    b.   The Complaint Identifies The Alleged Cisco Infringing Systems ....................7

    c.   Direct Infringement is Plead ..................................................................11

    d.   Induced Infringement is Plead................................................................12

    e.   Contributory Infringement is Plead.........................................................13

    f.   Willful Infringement is Plead................................................................13

II.   PLAINTIFF REQUESTS LEAVE TO AMEND SHOULD THE COURT FIND
    THE PLEADINGS INSUFFICIENT ................................................................13

III.  CONCLUSION AND PRAYER ..............................................................15

## TABLE OF AUTHORITIES

**Cases**

*Bot M8 LLC v. Sony Corp. of Am*, No. 2020-2218, 2021 U.S. App. LEXIS 20624 (Fed. Cir. July 13, 2021)................................................................................................................ 5, 6, 7, 13

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ............................ 6

*Iqbal*, 556 U.S. at 679 .................................................................................................................... 6

*Twombly*, 550 U.S. at 555 .............................................................................................................. 6

Plaintiff mCom IP, LLC. ("mCom") files this response to Defendant Cisco Systems Inc.'s ("Cisco") Motion to Dismiss[1] ("Defendant's Motion") showing the Court that Defendant's Motion should be Denied.

I.    **ARGUMENT**

a.  **Plaintiff properly pleads a case for direct infringement**

Plaintiff properly pleads a case for direct infringement by providing the identification of an alleged infringing Cisco product's platform, Cisco UFC operating on the omnichannel banking solutions and by providing screen shots to Cisco's website where Plaintiff contends support is provided for its infringement allegations.[2]  The website screenshots provide evidence that Cisco touts its Cisco UFC operating on the omnichannel banking solutions platform as having certain features establishing infringement.

Defendant argues that Plaintiff fails to plausibly allege joint infringement of system claims 13, 14, and 17. Specifically, Defendant references mCom's claim chart[3] and argues that mCom's allegations for claim 13 require multiple parties.  Defendant relies on specific features of claim 13, discussed here, as allegedly requiring multiple parties.  Claim 13 of the '508 Patent, recites:

> 13. A unified electronic banking system, said system comprising:
> a common multi-channel server, wherein said multi-channel server is communicatively coupled to one or more independent computer systems;
> **wherein each of one or more independent computer systems is associated with an independent financial institution, and each of said computer systems is communicatively coupled to said multi-channel server;**
> **one or more e-banking touch points, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points**

---

[1] Doc. No. 45.
[2] Doc. No. 23 at 4-11 and *Supra* at 2-5.
[3] Doc. No. 43-1.

**is in communication with one or more financial institutions through said multi-channel server; and**

a data storage device, wherein transactional usage data associated with a transaction initiated by a user through one of said e-banking touch points is stored in said data storage device and accessed by one or more of said other e-banking touch points;

wherein said active session is monitored via said server in real-time for selection of targeted marketing content correlated to said user-defined preferences, said targeted marketing content correlated to said user-defined preferences is selected subsequent to said monitoring and **transmitted in real-time to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, and wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session**.[4] (emphasis added)

Defendant points to page 37 of Plaintiff's claim chart (Doc. No. 43-1) and argues that

Plaintiff's allegation of infringement requires the use of multiple parties. At page 37 of the claim

charts, the charts show the following excerpt from claim 13:

| | |
|---|---|
| wherein each of one or more independent computer systems is associated with an independent financial institution, and each of said computer systems is communicatively coupled to said multi-channel server; one or more e-banking touch points, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; and | For example, Cisco's Digital Banking platform enables the customers digital banking devices (Mobile, PC, ATM etc.) to be in locations remote from the Financial institutions computer system. Customers can access their banking at home, from a cell phone, or from an ATM and the customer does not have to be in the same location as the Financial institutions computer system. |

[5]

---

[4] Doc. No. 43-2, Col. 10, line 35 to Col. 11, line 4.

[5] Doc. No. 43-1, page 37.

Claim 13 is directed to a unified electronic banking system.  The first feature of claim 13 recites "a common multi-channel server, wherein said multi-channel server is communicatively coupled to **one or more independent computer systems**." (emphasis added)  The next feature of claim 13 recites "wherein each of one or more independent computer systems is associated with **an independent financial institution**." (emphasis added)  These features define the capabilities of the claimed unified electronic banking system.  That is, the claimed unified electronic banking system does not require computer systems associated with an independent financial institutions as part of its features.  Rather, the claim defines that a common multi-channel server is in communication with the independent computer systems.  Thus, mCom's showing that customers can access banking from, for example, an ATM, is not a statement that the customer or the ATM are necessarily "parties."  Rather, Plaintiff is demonstrating that Cisco's Digital Banking Platform is capable of communicating with independent computer systems (e.g., ATMs), as recited in, for example, claim 13.

Claim 13 further recites "one or more e-banking touch points, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; and does not require that the claimed unified electronic banking system include independent computer systems." [6]

---

[6] Doc. No. 43-2, Col. 10, line 35 to Col. 11, line 4.

As shown in the claim charts,[7] customers access Cisco's accused unified electronic banking system at home, from a cell phone, or from an ATM to connect securely with one or more financial institutions.



For at last these reasons, Defendant's argument that mCom's requires multiple parties to meet the direct infringement claims fails and Plaintiff has plausibly alleged infringement of system claim 13 (as well as claims 14 and 17 that depend from claim 13).

Defendant further argues that mCom failed to plausibly allege joint infringement of method claims 1-3, 5, and 7-8.  Similar to its arguments regarding claim 13, Defendant argues that mCom relies on third parties in order to meet the limitations of claim 1.  Defendant argues that it does not direct banks to use any alleged "e-banking touchpoints."[9]  However, Cisco's digital banking platform communicatively couples digital devices and financial institutions with its multi-channel server and the multi-channel server interacts with e-touch points such as an ATM, mobile, PC, etc.

---

[7] Doc. No. 43-2, page 37.
[8] Doc. No. 43-2, page 37.
[9] Doc. No.  45, page 16.

| providing at least one **common multi-channel server** coupled to more than one e-banking touch points and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, | For example, Cisco's Digital Banking platform communicatively couple's digital devices and financial institutions with their (multi-channel server;)<br><br>Multi-channel banking allows Financial Institutions to "leverage multiple channels that allows brands to interact with their customers across multiple touchpoints"<br>https://www.marketingevolution.com/marketing-essentials/what-is-multi-channel-marketing<br>https://www.shopify.com/ca/enterprise/omni-channel-vs-multi-channel#:~:text=What%20is%20the%20difference%20between,and%20revolves%20around%20your%20product.<br><br>Cisco's Digital Banking Environment has a Multi-channel server to interact with multiple touchpoints such a ATM, Mobile, PC, Kiosk for a given customer. |



Figure 1. Omnichannel Interaction Helps Optimize

10

Defendant's Digital Banking platform meets every limitation of at least claims 1, 2, 3, 5, 7, 8, 13, 14 and 17. For at last these reasons, Defendant's argument that mCom's requires multiple parties to meet the direct infringement claims fails and Plaintiff has plausibly alleged infringement.

Plaintiff contends all elements of the claims are shown.  However, showing all elements is not required as explained in *Bot M8 LLC v. Sony Corp. of Am.*[11] where the Federal Circuit made

---

[10] Doc. No. 43-1, page 5.<br>[11] No. 2020-2218, 2021 U.S. App. LEXIS 20624 (Fed. Cir. July 13, 2021).

clear that: the relevant inquiry under *Iqbal*/*Twombly* is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Iqbal*, 556 U.S. at 679. ... In other words, a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content. *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.... There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. While the Supreme Court has said that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, it has also indicated that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555).[12]

Thus, an element-by-element proof of case is not necessary at the pleading stage.[13] However, Plaintiff provided exactly that, an element-by-element chart showing what it contends infringes at Cisco.  Thus, Cisco is put on Notice of what is alleged to infringe.

---

[12] *Bot M8 LLC v. Sony Corp. of Am.*, No. 2020-2218, 2021 U.S. App. LEXIS 20624, at *18-19 (Fed. Cir. July 13, 2021).
[13] *Bot M8 LLC v. Sony Corp. of Am*, No. 2020-2218, 2021 U.S. App. LEXIS 20624, at *1 (Fed. Cir. July 13, 2021) ("Once more, we address the stringency of pleading requirements in cases alleging patent infringement. Once more, we explain that patentees need not prove their case at the pleading stage."

The remainder of Defendant's Motion appears to be an argument that it does not infringe.[14] In fact, Defendant appears to understand Plaintiff's allegation completely thus rendering its motion to dismiss improper.  The Court should deny Defendant's Motion.

### b.  The Complaint Identifies The Alleged Cisco Infringing Systems

The chart used by Plaintiff in its Complaint contains the website address from Defendant's website at the bottom of the chart and an explanation of what is shown to the right. Further, Plaintiff specifically identifies the accused products through the hyperlinked documents in the opening paragraph of the claims chart:



[15]

Thus, Plaintiff has in fact referenced an example of a specific platform service, Cisco's Digital Banking Solutions ("Cisco's DBS") platform.  The website referenced in the claims chart shows every feature of the accused claims including Cisco's DBS platform.  The website referenced in the claims chart shows every feature of the accused claims by Cisco's DBS platform.  For example,

---

[14] Defendant's Second Motion to Dismiss at 7-11.
[15] Doc. No. 43-1 at 3.

with reference to claim 1, Cisco's DBS platform includes one or more e-banking touch points coupled to at least one computer system, where the e-banking touch points and at least one computer system are provided in locations remote from each other, as claimed.



https://www.cisco.com/c/m/en_us/solutions/industries/portfolio-explorer/portfolio-explorer-for-financial-services.html?s=explore-the-architectures [16]

Furthermore, Cisco's DBS platform provides at least one common multi-channel server coupled to more than one e-banking touch points, and also coupled to at least one computer system configured with at least one control console in locations remote from each other, as claimed. Cisco's DBS platform further provides the at least on common multi-channel server couple to more than one e-banking touch points and also coupled to at least on computer system (located remote from each other) configured with at least on control console, as claimed.

---

[16] Doc. No. 43-1, page 4.



**https://www.cisco.com/c/m/en_us/solutions/industries/portfolio-explorer/portfolio-explorer-for-financial-services.html?s=explore-the-use-cases&u=hybrid-workforce** [17]

The claimed plurality of e-banking touch points comprised of different types of e-banking touch point devices are in communication with one or more financial institutions through the multi-channel server, as claimed, is also disclosed by Cisco's DBS platform.



https://www.cisco.com/c/dam/en_us/solutions/industries/docs/finance/omnichannel-banking-achitecture.pdf [18]

---

[17] Id. at 6.
[18] Id. at 8.

The actionable input from a least one e-banking touch point is received, previously stored data is retrieved, wherein the previously stored data is accessible to any one of the e-banking touch points, and the previously stored data comprises data from one or more financial institutions and one or more user-defined preferences, as claimed, is also disclosed by Cisco's DBS platform. Retrieved data is delivered to at least one e-banking touch point transmitting the actionable input, and transactional usage data is accessible by any one or the e-banking touch points and the at least one computer system, as claimed, is also disclosed by Cisco's DBS platform.



https://www.cisco.com/c/en/us/solutions/industries/financial-services/retail-banking.html [19]

Further, Cisco's DBS platform also includes the monitoring of the active session in real-time for targeted marketing content and subsequent to the monitoring, selecting in real-time the

---

[19] Id. at 9-13.

targeted marketing content, as claimed.[20]  Finally, Cisco's DBS includes transmitting in real-time the targeted marketing content during an active session to at least one of the e-banking touch points and the response from the user is using during the active session to determine whether transmission of additional information related to the marketing content occurs during the active session, as claimed.



[21]

https://www.cisco.com/c/en/us/solutions/industries/financial-services/retail-banking.html

Every feature of the claims is provided or included in Cisco's DBS platform.  There is very little question of what is alleged to infringe.

### c.  Direct Infringement is Plead

Plaintiff properly pleads a case for direct infringement by providing the identification of an alleged infringing Cisco product's platform, Cisco DBS platform, and by providing screen shots

---

[20] Id. at 14-16.
[21] Id.

to Cisco's website where Plaintiff contends support is provided for its infringement allegations.[22] The website screenshots provide evidence that Cisco touts its Cisco DBS platform as having certain features establishing infringement. As Cisco's contention is that no product was identified, which is demonstrably false, Cisco's Motion should be denied. Plaintiff provided what it alleges provides notice of direct infringement.

Cisco's attacks at Plaintiff' pleadings of direct infringement ring hollow as Plaintiff has alleged which of Cisco's accused platforms infringe and that those platforms contain the accused elements. More is not required at the pleading stage.[23] Specifically, Plaintiff alleged that the Cisco's DBS platform contains the elements.[24] Plaintiff further alleges that Cisco's e-banking touchpoints include an accessible banking website that can connect and perform banking operation.[25] The claim element only requires one or more of the laundry list of elements. Plaintiff clearly identifies at least one of the elements as being a Cisco element. Lastly, Plaintiff has alleged that that the Cisco DBS platform provides targeted marketing, which is sufficient at the pleading stage.

### d. Induced Infringement is Plead

Plaintiff's claims for induced infringement are adequately plead as Plaintiff pleads Cisco knew of the lawsuit from at least the filing date of the lawsuit and that Cisco instructed its customers on how to use the platform.[26] Thus, specific intent to infringe is shown from at least the filing date of the lawsuit. If the Court were inclined to grant the motion as to pre-suit knowledge, Plaintiff request leave to amend should discovery reveal pre-suit knowledge. To the

---

[22] Doc. No. 43-1.
[23] *Bot M8 LLC v. Sony Corp. of Am*, No. 2020-2218, 2021 U.S. App. LEXIS 20624, at *1 (Fed. Cir. July 13, 2021) ("Once more, we address the stringency of pleading requirements in cases alleging patent infringement. Once more, we explain that patentees need not prove their case at the pleading stage."
[24] Doc. No. 43-1.
[25] *Id.*.
[26] Doc. No. 43-1.

extent the Court finds the pleading insufficient for induced infringement, Plaintiff requests leave to amend.

### e.  Contributory Infringement is Plead

Plaintiff's claims for contributory infringement are adequately plead as Plaintiff pleads Cisco knew of the lawsuit from at least the filing date of the lawsuit and that Cisco instructed its customers on how to use the platform, there is a direct infringer, and that Cisco's product are a material part of the invention and there are no non-infringing uses.[27]  Thus, specific intent to infringe is shown from at least the filing date of the lawsuit.  If the Court were inclined to grant the motion as to pre-suit knowledge, Plaintiff request leave to amend should discovery reveal pre-suit knowledge.   To the extent the Court finds the pleading insufficient for contributory infringement, Plaintiff requests leave to amend.

### f.  Willful Infringement is Plead

Plaintiff plead for willful infringement only for future infringement.  However, if discovery reveals pre-suit knowledge, Plaintiff requests the Court allow it to amend and add claims for current willful infringement.

## II.    PLAINTIFF REQUESTS LEAVE TO AMEND SHOULD THE COURT FIND THE PLEADINGS INSUFFICIENT

If the Court determines Plaintiff's Complaint to be insufficient, Plaintiff requests leave to amend.

## III.    CONCLUSION AND PRAYER

WHEREFORE, Plaintiff respectfully prays the Court deny Defendant's Motion to Dismiss as Defendant's pleadings are an admission it understands the complaint against it or in the alternative grant Plaintiff the right to amend and file its First Amended Complaint.

---

[27] *Id.*

13

Respectfully submitted,

**Ramey LLP**

By: /s/ William P. Ramey, III
     William P. Ramey, III
     Texas Bar No. 24027643
     5020 Montrose Blvd., Suite 800
     Houston, Texas 77006
     (713) 426-3923 (telephone)
     (832) 900-4941 (fax)
     wramey@rameyfirm.com

     ***Attorneys for mCom IP, LLC***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of November 22, 2022, with a copy of the foregoing via e-mail.

     /s/ William P. Ramey, III
     William P. Ramey, III