# EXHIBIT P

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

F I L E D

SEP 1 3 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                DEPUTY CLERK

| | | |
|---|---|---|
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No.** |
| | § | **6:23-CV-00035-AM** |
| CISCO SYSTEMS, INC., | § | |
| **Defendant.** | § | |
| | § | |

## ORDER

Pending before the Court is the Defendant's Motion for Judgement on the Pleadings pursuant to Federal Rule of Procedure 12(c). (ECF No. 13.) For the reasons discussed herein, the motion is **GRANTED**.

### I.    BACKGROUND

On January 20, 2023, the Plaintiff, Front Row Technologies, LLC, brought suit against the Defendant, Cisco Systems, LLC, alleging patent infringement of U.S. Patent No. 8,750,784 (hereinafter "the '784 patent"). The Plaintiff is the owner of the '784 patent by assignment. The Defendant is alleged to have put the inventions claimed by the '784 patent into service by maintaining, operating, and administering systems, products, and services that utilize and deliver "venue-based data" to its customers. The Plaintiff alleges that the Defendant's use of venue-based products and services infringes on "one or more of claims 1-20" of the '784 patent. (ECF No. 1.)

On June 10, 2014, the '784 patent entitled "Method, system and server for authorizing computing devices for receipt of venue-based data based on the geographic location of a user," was issued by the U.S. Patent and Trademark Office. (*Id.*) The Plaintiff claims that the '784 patent "relates to novel and improved methods, systems, and servers for authorizing access by a user of

1

a service associated with an event at a venue and provided via a computer network based on a determined geographic location of the user." (ECF No. 1.) In other words, the patent is directed to "systems for delivering venue-based data such as video, audio, advertisements, video replay, statistics and other information to one or more computing devices. . . . located remote from a venue and/or within the venue itself." (ECF No. 1-1, col. 4, ll. 11-19.) Claim 1 of the '784 patent states as follows:

> 1. A method for authorizing access by at least one user of at least one service associated with a venue and provided via a wireless network based on a determined location of at least one computing device in the form of a wireless hand held device used by said at least one user, said method comprising:
>
> determining, via a wireless signal obtained from at least one VPS device associated with a venue positioning system deployed within a venue, a location of at least one user based on location information obtained from said at least one VPS device about the location within the venue of said at least one computing device utilized by said at least one user wherein the at least one VPS device uses a triangulation method to determine the location of the wireless hand held device within the venue; and
>
> allowing said at least one computing device to receive said at least one service from a server over a wireless network based on said location information provided from said at least one VPS device for said at least one computing device.

(ECF No. 1-1, col. 26, ll. 8-26.)

The Defendants seek to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Procedure 12(c) on the grounds that the '784 patent is invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. Specifically, the Defendant argues that that the claims of the '784 patent are directed towards "the abstract idea of authorizing handheld devices to receive streaming video based on a user's location" and perform this function using "only conventional components and techniques." (ECF No. 13) (citation omitted). The Defendant asserts that, because these types of claims are barred by § 101, the patent's claims are ineligible. As such, the Defendant requests the Court to grant the instant motion.

2

## II.   LEGAL STANDARD

The Defendant has moved for a judgement on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A motion for judgement on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (citation and internal quotation marks omitted).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a defendant's motion, a plaintiff's pleading must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, quotations, and alterations omitted); *accord Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Iqbal*, 556 U.S. at 696 (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quotation omitted). Therefore, the complaint must be liberally construed in a plaintiff's favor, all reasonable inferences must be drawn in favor of a plaintiff's claims, and the factual allegations of the complaint must be taken as true. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). In ruling on a Rule 12(b)(6) motion to dismiss, courts generally should not go beyond the pleadings and must limit their inquiry to the facts stated in the complaint. *See* FED. R. CIV. P. 12(d); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

### III.  RELEVANT LAW

Section 101 of the Patent Acts permits: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, [to] obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, the Supreme Court has recognized limits to patentable subject matter under § 101. For example, § 101 "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). "[T]he concern that drives this exclusionary principle [is] one of pre-emption." *Alice*, 573 U.S. at 216 (citing *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010)). These categories are not patent-eligible because "they are the basic tools of scientific and technological work" that are "free to all men and reserved exclusively to none." *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 71 (2012) (quotations

4

omitted). Issuing patents that claim laws of nature, natural phenomena, and abstract ideas "might tend to impede innovation more than it would tend to promote it." *Id.* at 71. The Supreme Court has "repeatedly emphasized . . . a concern that patent law not inhibit further discovery by improperly tying up the future use of laws of nature." *Id.* at 85.

However, the Supreme Court has also cautioned courts to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217. The Supreme Court has recognized that, "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (quoting *Mayo*, 566 U.S. at 71). Thus, an invention involving an abstract concept may still be patent-eligible if it applies such concepts "to a new and useful end." *Alice*, 573 U.S. at 217; *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). As such, when applying the § 101 exception, courts must distinguish between patents that claim the "building blocks" of human ingenuity, which are ineligible for patent protection, from those that integrate the building blocks into something more, thereby "transforming" them into a patent-eligible invention. *Alice*, 573 U.S. 217 (citing *Mayo*, 556 U.S. at 89).

In *Alice*, the Supreme Court identified a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. Under the *Alice* test, a court must first ask if the claim is "directed to one of the patent-ineligible concepts," such as a law of nature, natural phenomena, or abstract idea. *Id.* If yes, then the court must move to the second step. The second step requires a court to "consider the elements of each claim both individually and as an ordered combination to determine whether [any] additional elements transform the nature of the claim into a patent-eligible application." *Id.* (citation and internal quotation marks omitted). The Supreme Court described this second step as "a search for an inventive concept," or, "an element

5

or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (citation and internal quotation marks omitted) (brackets omitted).

Patent eligibility under § 101 is an issue of law. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). The Federal Circuit has confirmed that determining patent eligibility under § 101 is appropriate at the pleadings stage. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) (affirming district court's determination of patent-ineligibility under § 101 at the pleading stage); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (determining that it was "a straightforward matter [for the district court to] conclude that the claims in this case are invalid" at the pleading stage). "Section 101 imposes a 'threshold test' . . . one that must be satisfied before a court can proceed to consider subordinate validity issues. . . ." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Mayer, J., concurring) (citing *Bilski*, 561 U.S. at 602). "[S]ubject matter eligibility is the primal inquiry, one that must be addressed at the outset of litigation." *Ultramercial*, 772 F.3d at 718.

## IV.  ANALYSIS

### A.  Ripeness & Burden of Proof

The Plaintiff contends that resolving § 101 motions before claims construction would be inappropriate. (ECF No. 15.) As explained above, the determination of patent eligibility under § 101 is a question of law, and therefore appropriate at the pleading stage. *See OIP Techs., Inc.*, 788 F.3d at 1362. The Federal Circuit has stated explicitly that, "[a]lthough the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content*

6

*Extraction and Transmission*, 776 F.3d at 1349. However, "if the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

The Plaintiff cites the Federal Circuit's decision in *MyMail* to support their position that disposition at this stage is premature. While the Federal Circuit did instruct district courts in *MyMail* to resolve claim construction disputes before conducting a § 101 analysis, this rule was tethered to the assumption that a construction dispute existed. *MyMail*, 934 F.3d at 1379. Here, neither party has raised a dispute as to the construction of any claim. Therefore, claim construction is not necessary to resolve the instant motion.

The Plaintiff also asserts that the Defendant has the burden of proving that patent-ineligibility by clear and convincing evidence. The Federal Circuit agrees – holding that determining "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). As such, "[a]ny fact . . . that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.* However, in *Berkheimer*, the Federal Circuit clarified that this standard does not undermine the propriety of adjudicating patent eligibility at the motion to dismiss stage. *Id.* Therefore, to the extent that any questions of fact exist in this case, the Court will apply the clear and convincing evidence standard.

## B. Representative Claims of the Patent-in-Suit

As a final preliminary matter, the Court must determine which of the '784 patent's claims are representative for the purpose of addressing patent-eligibility. The Plaintiff alleges in its

7

Complaint that the Defendant has infringed "one or more of claims 1-20 of the '784 patent." However, the Plaintiff only charted claim 1 in its Complaint. (ECF No. 1-2.) Further, in response to the Defendant's instant motion, the Plaintiff only discusses Claim 1 in its application of the *Alice* test. Thus, the Court is compelled to assume that the Plaintiff considers Claim 1 representative of the '784 patent for purposes of the Defendant's § 101 challenge.

Nonetheless, the Court will conduct its own analysis to ensure that Claim 1 is representative of the '784 patent for the purposes of the instant motion. A court need not address each patent claim individually if "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction and Transmission*, 776 F.3d at 1348 (quotations omitted). *See Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-00014-RO, 2015 WL 11117867, at \*4 (N.D.Tex. May 28, 2015) ("Plaintiff . . . argue[s] that the claims are all presumed to be valid and must each be challenged in the absence of agreed representative claims. However, the Federal Circuit specifically dismissed this argument in *Content Extraction*, 776 F.3d at 1348."). Upon such a finding, a court may identify one claim as representative of all the claims in the patent challenged under § 101. *Id.*

After examining Claims 1-20 in the '784 patent, the Court concludes that Claim 1 fairly and accurately represents the remainder of the claims. The Federal Circuit has explained that there may be no "meaningful distinction between the method and system claims or between the independent and dependent claims," where "[t]he system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims." *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007 (Fed. Cir. 2014). Here, Claims 2-8 are repetitive-method claims that are plainly and directly linked to the methods asserted in Claim 1. In addition, Claims 9-16 generally describe the system by which a Venue Positioning System ("VPS") enabled device communicates to a Bluetooth-enabled computing device to deliver

8

instructions to exclude communications from outside a particular geographic area. These claims
are substantially similar to Claim 1's description of allowing a computing device to receive tailored
communications based on a triangulation of the device's geographic location. Lastly, Claims 17-
20 offer further explanations of how wireless devices will use geographic data to receive certain
communications. While Claims 2-20 elaborate on the methods and systems by which Claim 1
may be effectuated, they are nonetheless centrally linked to it. As such, this Court will treat Claim
1 as representative of all of the claims made in the '784 patent.

### C. *Alice* Step 1

The Court must first evaluate the patent claims "[o]n their face" and determine whether the
claims are directed to patent-ineligible subject matter—"laws of nature, natural phenomena, and
abstract ideas." *Alice*, 573 U.S. at 216, 219. The Defendant argues that the '784 patent is directed
to the abstract idea of authorizing access to content based on a user's location. (ECF No. 35.) The
Plaintiff contends that the '784 patent's claims are directed towards the improvement to the
functioning of a computer or network, and therefore is patent-eligible at step one of the *Alice* test.
The Court disagrees. Because the '784 patent is directed towards an abstract idea, the Defendant
has satisfied the first step of *Alice*.

At step one of *Alice*, the Court must identify the purpose of the claim and determine
whether that purpose is abstract. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d
1343, 1346 (Fed. Cir. 2015) ("Under step one of *Mayo/Alice*, the claims are considered in their
entirety to ascertain whether their character as a whole is directed to excluded subject matter.").
"Application of the first [*Alice*] step does not include a detailed examination of the asserted claims,
either individually or as an [']ordered combination[']; that analysis is properly lodged within step
two." *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. 12-10943-FDS, 2015 WL 1943826

(D. Mass. Apr. 28, 2015) (citing *Alice*, 573 U.S. at 219-20). Instead, courts "should recite a claim's purpose at a reasonably high level of generality." *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Cal. 2014). Step one is a "'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility." *Id.* If a claim's purpose is abstract, a court looks with more care at specific claim elements at step two. *Id.* The entirety of the patent's claims need not be abstract. A patent may be ineligible if "the concept embodied by the majority of the limitations" describes an abstract idea. *See Ultramercial*, 772 F.3d at 715 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.").

The Plaintiff and Defendant both agree that the '784 patent relates to authorizing access by a user of a service associated with an event at a venue. (ECF No. 1, par. 7; ECF No. 16.). In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the Federal Circuit was confronted with a patent that claimed methods and systems for providing customized web page content to the user as a function of user-specific information. 792 F.3d 1363, 1364 (Fed. Cir. 2015). One of the patent at issue in *Intellectual Ventures*, "the '382 patent, claimed a [']system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user['] based on the [']user's personal characteristics.[']" *Id.* at 1369. The owner of the '382 patent conceded that "tailoring content based on the viewer's location or address" was a "function of the user's personal characteristics limitation." *Id.* (quotations omitted). The Federal Circuit determined that "[t]his sort of information tailoring is a 'fundamental . . . practice long prevalent in our system. . . .'" *Id.* (quoting *Alice*, 573 U.S. at 219).

10

The Circuit likened the '382 patent to a newspaper insert, which "ha[ve] often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location." *Intellectual Ventures I*, 792 F.3d at 1369. The Federal Circuit concluded that providing content based on the location of the individual consumer is an abstract idea that satisfied the first step of *Alice*. While *Intellectual Ventures I*, did not concern claims that solely focused on distributing location-based content, the Federal Circuit's analysis in instructive in the instant case.

Several district courts have also adjudicated § 101 challenges involving similar claims. In *Beteiro, LLC v. BetMGM, LLC*, the plaintiff was the assignee of the '755 patent, which claimed "an apparatus or method for exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." 626 F. Supp. 3d 789, 799 (D.N.J. 2022). Upon an examination of preexisting caselaw, the district court concluded that "the concept of taking action in response to location-based information . . . is abstract and patent-ineligible." *Id.* at 800. Similarly, the District Court for the District of Delaware has found that "claims reciting steps for ['](1) determining the location of a mobile gaming device; (2) using a lookup table to determine the game configuration associated with that location; and (3) implementing that game configuration['] were [']directed to the abstract idea of determining game configuration based on location.[']" *CG Technology Development, LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847-50 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021). *See also NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991-92 (D. Nev. 2021) (holding that a patent claim directed to "incentivizing gambling tailored to a user's location" was an abstract idea).

Both parties direct the Court's attention to the District of New Mexico's decision in *Front Row Technologies, LLC v. NBA Media Ventures, LLC*, 2045 F. Supp. 3d 1190 (D.N.M. 2016)

11

(hereinafter "*Front Row I*"). In *Front Row I*, one of this Plaintiff's other patents, the '027 patent, was determined to be patent-ineligible after the court analyzed it under the *Alice* test. The '027 patent was directed to the idea of authorizing handheld devices to receive streaming video based on a user's location. *Id.* at 1238. Largely relying on *Intellectual Ventures I*, the court determined that restricting content based on a user's location is an abstract idea. *Id.* at 1274. Because the '027 patent was directed towards the same idea, the district court determined that the patent at issue satisfied the first step of *Alice*.

The Defendant argues that the '027 patent "has a nearly identical specification and claimed subject matter." (ECF No. 13.) As such, the Defendant urges this Court to adopt the same findings as the court in *Front Row I*. Curiously, the Plaintiff does not attempt to rebut the Defendant's position, but instead suggest that the court's analysis in *Front Row I* erred in "rely[ing] heavily on case law, but not the facts of individual [relevant] cases" from the Federal Circuit. (ECF No. 15.) Nonetheless, the Court does note that the '027 patent and '784 patent are remarkably similar and are both directed to authorizing access by a user of a service associated with an event at a venue. (*See Front Row I*, 2045 F. Supp. 3d at 1274, ECF No. 1-1, col. 26, ll. 8-9.)

While *Front Row I* offers relevant analysis, this Court must note that it is not bound by the court's decision in *Front Row I*, nor any other district court's related decision. However, to determine whether a claim amount to an abstract idea, the Federal Circuit has found it "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016) (citation omitted). For claims that "simply recite conventional actions in a generic way" and "do not purport to improve any underlying technology," they are directed to an abstract

12

idea. *Universal Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1349 (Fed. Cir. 2021) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

The Federal Circuit determined in *Intellectual Ventures I* that tailoring information based on a customer's location is "a fundamental . . . practice long prevalent in our system. . . ." 792 F.3d at 1369. With this principle in mind, several district courts have determined that claims directing action in response to location-based data in the online gaming context are abstract. *See Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789 (D.N.J. 2022); *CG Technology Development, LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021); *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977 (D. Nev. 2021). In a case with a nearly identical patent-at-issue owned by the same plaintiff as the one in the instant case, a court determined that the claims were also abstract, and thereby satisfied the first step of *Alice*. *See Front Row I*, 2045 F. Supp. 3d at 1274. Because Claim 1 of the'784 patent also seeks to restrict content based on the user's location-based data, it too, is directed towards an abstract idea. Thus, the first step of *Alice* is fulfilled in this case, and the Court will proceed to the second step of the analysis.

## D. *Alice* Step 2

The Supreme Court explained in *Alice* that if an abstract idea is found at step one, then at step two of the analysis the court must:

> examine the elements of the claim to determine whether it contains an "'inventive concept'" sufficient to "transform" the claimed abstract idea into a patent-eligible application. A claim that recites an abstract idea must include "additional features" to ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Mayo* made clear that transformation into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'"

*Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 77). The court is to consider the claims at issue "both individually and 'as an ordered combination.'" *Alice*, 573 U.S. at 217 (citations omitted). The "additional . features" claimed must be more than "well-understood, routine, conventional, activity." *Ultramercial*, 772 F.3d at 715 (citing *Mayo*, 566 U.S. at 73). The *Alice* Court also held that the "[m]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

For example, "[s]tating an abstract idea while adding the words 'apply it with a computer'" is not enough for patent eligibility. *Id.* (citations omitted). Similarly, "mere instruction to 'implement' an abstract idea 'on . . . a computer'" fails to impart patent eligibility as well. *Id.* (citations and brackets omitted). "[An idea] can escape the realm of the abstract only through concrete application . . . This concrete application is new technology—taking [an ineligible concept] and 'tying it down' by implementing it in a precisely defined manner." *Ultramercial*, 772 F.3d at 722 (Mayer, J., concurring) (citing *Mackay Radio & Tel. Co. v. Radio Corp.*, 306 U.S. 86, 94, (1939)). The claim must be "more than a drafting effort designed to monopolize the abstract idea." *Alice*, 573 U.S. at 221. Rather, the claims must add something to the abstract idea so that the patent covers a specific application of the abstract idea. *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 937 (N.D. Cal. 2015).

Here, the '784 patent fails to claim any inventive concepts that bring the patent into the realm of non-abstract application. The Plaintiff contends that the '784 patent is not directed towards an abstract idea because of its "allegations that a VPS device uses a triangulation method to determine the geographic location of a user with the venue [and]

14

provides a new and improved method and system for determining the location of a user within a venue with a computer network." (ECF No. 15.)  However, the '784 patent contains no elaboration on which triangulation methods will be used or how they will be applied.  Instead, the patent claims vague triangulation methods that "may be used through the hand held device or VPS devices to determine the location of the hand held device within the venue." (ECF No. 1-1, col. 23, ll. 17-20.)  The '784 patent appears directed at deploying enhanced calculations to better locate users.  However, "[t]he different use of a mathematical calculation, even one that yields different or better results, does not render patent eligible subject matter." *In re Board of Trustees of Leland Stanford Junior University*, 991 F.3d 1245, 1251 (Fed. Cir. 2021).  Thus, the '784 patent's claimed triangulation methods do not present as an inventive concept capable transforming the abstract idea into patent-eligible subject matter.

The Plaintiff further contends that the '784 patent has alleged a significant improvement by providing a VPS system of a computer network and a server.  However, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.  The '784 claims directed towards a "computer network" and a "server" merely recites generic computer terms that have long been insufficient to confer an inventive concept.  The Plaintiff's claims fail to fashion an inventive concept.  Therefore, the '784 patent is ineligible under § 101.

## V.     CONCLUSION

For the foregoing reasons, the Defendant's Motion for Judgement on the Pleadings (ECF No. 13), is **GRANTED**.

Upon its request, the Court will permit the Plaintiff the opportunity to amend its Complaint.

The Plaintiff must file its Amended Complaint with 30 days of the date of this Order.

SIGNED and ENTERED on this 13th day of September 2023.

ALIA MOSES
Chief United States District Judge