**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| MCOM IP, LLC, | |
|        **Plaintiff,** | |
| **v.** | Civil Action No. 6:22-cv-00261-ADA |
| CISCO SYSTEMS, INC. | |
|        **Defendant.** | |

**WILLIAM P. RAMEY, III'S EMERGENCY MOTION FOR A PARTIAL STAY OF ORDER GRANTING DEFENDANT'S MOTION FOR RECOVERY OF ATTORNEYS' FEES AND FOR SANCTIONS**

i

# TABLE OF CONTENTS

I.   INTRODUCTION AND RELIEF REQUESTED ................................................1

II.  PROCEDURAL BACKGROUND...................................................................2

      1.  Underlying Case and Dismissal ..............................................2

      2.  Cisco's Sanctions Motion and the Sanctions Order ....................3

  A.  The Prefiling Injunction Relies on Clearly Erroneous or Overstated Factual Findings About the Amended Complaint's Claim Chart ............................................4

      1.  The Amended Complaint and Claim Chart Contain Specific, Claim-by-Claim Factual Contentions ..............................................4

      2.  The Court's Critique Goes to the Quality of the Mapping, Not the Existence of a Factual Basis ..............................................7

      3.  The Finding that the Non-IPR Claims Were Added Solely to Evade a Stay Is Unsupported by the Record ..............................................8

      4.  Because These Factual Findings Are At Least Seriously Contested, They Cannot Sustain a Broad Prefiling Injunction ..............................................8

      5.  The Injunction's Reliance on "Other Cases" Goes Beyond What This Record Actually Establishes ..............................................9

III. LEGAL STANDARD ..................................................................13

IV. ARGUMENT ..........................................................................14

  A.  There Are Serious Legal and Procedural Questions Regarding the Prefiling Injunction ..............................................14

      1.  Overbreadth and lack of tailoring under Baum and Nix..................14

      2.  Disproportionate leap from case-specific misconduct to an indefinite practice restriction ..............................................15

      3.  Serious legal questions suffice where irreparable harm is strong..................15

  B.  Mr. Ramey Will Suffer Irreparable Harm Absent a Stay or Narrowing ..................16

      1.  Direct impairment of ability to practice in a leading patent forum..................16

      2.  Client harms and chilled access to counsel and forum ....................16

      3.  Ongoing reputational and professional stigma ..............................17

      4.  No adequate remedy on appeal..............................................17

  C.  A Stay or Narrow Modification Will Not Substantially Injure Cisco or Others..........17

      1.  Cisco remains protected by the existing sanctions and standard tools ............17

      2.  Other potential defendants face no new risk....................................18

      3.  Conditional or alternative relief further minimizes any potential injury ........18

D.  The Public Interest Favors a Stay or Narrowing of the Prefiling Injunction ...............18

    1. Public interest in access to courts and experienced patent counsel ..................18

    2. Public interest in constrained use of extraordinary sanctions ...........................19

V.  ALTERNATIVE RELIEF .........................................................................................................19

VI. CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) .................................................................13

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008) ...........3, 8, 9, 14, 15, 16, 19, 20

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559 (2014) .....................................13

*Nix v. Major League Baseball*, 62 F.4th 920 (5th Cir. 2023) ..................................................14, 15

*Ruiz v. Estelle (Ruiz I)*, 650 F.2d 555 (5th Cir. 1981).................................................................13

*Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854 (5th Cir. 1982) ...............................................................13

## Statutes

28 U.S.C. § 1927 ...........................................................................................................2, 10, 11, 19

35 U.S.C. § 285 ...........................................................................................................2, 6, 7, 10, 19

## Rules

Federal Rule of Civil Procedure 62 ...............................................................................................1

**I. INTRODUCTION AND RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 62, Movant William P. Ramey, III ("Mr. Ramey") respectfully moves for a partial stay of this Court's Sealed Order Granting Defendant's Motion for Recovery of Attorneys' Fees and for Sanctions (ECF No. 76, the "Sanctions Order") pending appeal, namely a stay of the prefiling injunction:

In the Sanctions Order dated December 16, 2025, the district court:

1. Awarded Cisco Systems, Inc. ("Cisco") $72,551.60 in attorneys' fees, jointly and severally against mCom IP, LLC and Mr. Ramey; and

2. Enjoined Mr. Ramey and Ramey LLP "from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof," and required that Mr. Ramey attach a copy of the order to any such complaint. (ECF No. 76 at 16-17)

This motion seeks a stay only as to the pre-filing injunction and attachment requirement (the "Prefiling Injunction"), not the monetary fee award,[1] pending resolution of the appeal. In the alternative, if the Court declines to stay the Prefiling Injunction entirely, Mr. Ramey requests that the Court modify its operation during the pendency of the appeal by: (1) Converting the Prefiling Injunction into a time-limited reporting/certification requirement (e.g., for a defined period, Mr. Ramey must file a presuit-investigation declaration with any new WDTX patent complaint and file it with the complaint); or (2) Imposing a sunset provision (e.g., the Prefiling Injunction automatically expires after 6 months unless specifically renewed on a developed record); and/or

---

[1] Which is subject to an appeal.

(3) Requiring that any pre-filing review in the Western District of Texas be conducted within a short, defined deadline (e.g., 3-5 days), after which permission is deemed granted.

As set forth below, there are serious legal and procedural questions concerning the breadth and process of the Prefiling Injunction, its enforcement will cause irreparable harm to Mr. Ramey and his clients, a stay will not materially injure Cisco or other parties, and the public interest favors limited and carefully scrutinized use of attorney-specific pre-filing restrictions.  The Prefiling Injunction does not merely reflect a different view of pleading standards; it rests on factual findings about what Movant did and did not do before and in filing the amended complaint. Those findings—that Movants asserted the non-IPR claims "without any semblance of a proper pre-suit investigation," fabricated infringement contentions to evade a stay, and failed even to chart key limitations—are not simply debatable legal characterizations, they are demonstrably inconsistent with the actual contents of the amended complaint claim chart.[2] Because the record shows a concrete, claim-by-claim factual analysis tied to specific Cisco materials, the injunction's core predicates are clearly overstated, if not clearly erroneous. An injunction grounded on such misapprehensions of the factual record cannot stand and, at a minimum, warrants a stay pending appellate review.

## II. PROCEDURAL BACKGROUND

### 1. Underlying Case and Dismissal

mCom IP, LLC filed this action against Cisco on March 10, 2022, alleging infringement of U.S. Patent No. 8,862,508. (ECF No. 1). Cisco moved to stay in light of an instituted inter partes review ("IPR") (ECF No. 11) and separately moved to dismiss the initial complaint for failure to

---

[2] ECF No. 43-1 and attached as Exhibit C.

state a plausible claim (ECF No. 17). The district court dismissed the original complaint without prejudice, allowing amendment. (ECF No. 44).  mCom filed an amended complaint (ECF No. 43), which Cisco again moved to dismiss (ECF No. 45). After mCom's counsel did not appear at the hearing on Cisco's second motion to dismiss (ECF No. 49), the district court granted Cisco's motion and dismissed the case with prejudice. (ECF No. 50).

**2. Cisco's Sanctions Motion and the Sanctions Order**

Cisco moved for attorneys' fees and sanctions under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the court's inherent powers. (ECF Nos. 52, 60, 63). The court held oral argument on December 14, 2023. (ECF No. 74). On December 16, 2025, the court issued the Sealed Order Granting Defendant's Motion for Recovery of Attorneys' Fees and for Sanctions. (ECF No. 76).  In that order, the court found this case "exceptional" under § 285 and awarded Cisco $72,551.60 in fees corresponding to Cisco's two motions to dismiss (ECF No. 76 at 2, 6-10); found Mr. Ramey sanctionable under § 1927 (Id. at 10-11); and, applied the *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008), factors and concluded that a district-wide Prefiling Injunction against Mr. Ramey and his firm for all patent infringement complaints in the Western District of Texas was warranted. (Id. at 13-16).

The order provides:

> Additionally, for the reasons stated above, William Ramey and Ramey LLP are hereby **ENJOINED** from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof. Mr. Ramey is required to attach a copy of this order with any complaint Mr. Ramey or Ramey LLP files in the Western District of Texas that includes a claim of patent infringement. (Sanctions Order at 17).

The order does not specify any time limit, review mechanism, or decision deadline for the required preauthorization.  In fact, when Mr. Ramey reached out to the Law Clerks for  Judge Albright to

understand how to get approval, he was told "[h]ow that approval occurs is not contemplated by the Order."[3]

### A. The Prefiling Injunction Relies on Clearly Erroneous or Overstated Factual Findings About the Amended Complaint's Claim Chart

The Prefiling Injunction rests largely on the premise that mCom asserted the non-IPR claims "without any semblance of a proper pre-suit investigation" and in bad faith to evade a stay. (ECF Nho. 76 at 1-3, 10-11) That premise is factually unsound. The actual contents of the amended complaint's claim charts (ECF No. 43-1) show a concrete, claim-by-claim factual analysis—even if the Court ultimately found that analysis legally insufficient under Rule 12. On this record, characterizing mCom's effort as essentially "no investigation" is, at minimum, seriously debatable and cannot support the extraordinary remedy of a district-wide prefiling bar.

### 1. The Amended Complaint and Claim Chart Contain Specific, Claim-by-Claim Factual Contentions

The Order describes the amended complaint as having failed to identify "any specific product," "chart certain claim limitations (e.g., a 'customer profile')," or explain how the cited graphics mapped to the claim language. (ECF No. 76 citing ECF No. 53-1 at 7, 11). That characterization does not fairly reflect the actual contents of the claim charts accompanying the first amended complaint.  In fact, ECF No. 53-1 that Cisco's lawyer included in its Motion for Sanctions[4] is not the claim chart from the First Amended Complaint[5] but rather the claim chart from the Original Complaint[6] For this reason alone, the Prefiling Injunction should be stayed pending the appeals as the Court did not consider the correct claim chart of the First Amended Complaint.[7]

---

[3] Ex. A at 2/3; Declaration of William P. Ramey, III ("Ramey Decl.") at ¶¶4-5.
[4] ECF No. 52-1 at ¶26 (Cisco's attorney swearing Ex. B is a copy of the infringement contentions)(sealed).
[5] ECF No. 43-2.
[6] ECF No. 1-1.
[7] Ramey Decl. at ¶¶17-18.

Exhibit C to this Motion is a true and correct copy of the claim chart attached to the First Amended Complaint,[8] a 45-page claim chart that: (1) Specifically identifies a Cisco product; (2) Separately breaks down each element of asserted claims of the '508 patent; (3) Quotes or paraphrases the claim language for each limitation; and (4 For each quoted limitation, provides a narrative "For example…" explanation tying that limitation to specifically identified Cisco materials (URLs, screenshots, diagrams, and marketing/technical descriptions).[9] For example:

- **Identification of Cisco product**: The claim chart with the First Amended Complaint identifies Cisco's Online banking platform and provides web address to access the architecture of the website:        https://www.cisco.com/c/m/en_us/solutions/industries/portfolio-explorer/portfolio-explorer-for-financial-services.html?s=explore-the-architectures.(ECF No. 43-1 at 4/45; Ramey Decl. at ¶¶10-11)

- "**Customer profile**" limitations in claims 2, 8, and 14.  For these dependent claims, Exhibit C identifies the "customer profile" limitation and then cites Cisco financial-services materials showing customer-specific information (name, picture, and other profile data) in Cisco's digital banking environment. See, e.g., ECF 43-1 at:

For Claim 2- (at 18/45)("US 8,862,508: claim 2… For example, Cisco customers have a profile stored in the data base with their name and or picture.") (with an accompanying banking login/dashboard image);

For Claim 8- (at 34/45) (image from claim 2); and,

For Claim 17- (at 44/45) (image from claim 2).[10]

---

[8] ECF No. 43-1.
[9] Ramey Decl. at ¶9.
[10] Ramey Decl. at ¶¶12-14.

- "**Common point of control**" in claim 17.*

For claim 17, Exhibit C cites Cisco's "Omnichannel Banking Architecture" and reproduces a diagram labeled "Figure 1. Omnichannel Interaction Helps Optimize Revenue Capture," asserting: "For example, CISCO system provides said one or more financial institutions with a common point of control of functionality provided by said system." ECF 43-1 at 45.[11]

- **Transactional usage data and multi-touchpoint access**.

For the independent claims, Exhibit C cites Cisco's digital-banking and financial-services pages—including "Digital Banking," "Portfolio Explorer for Financial Services," and "Retail Banking" webpages—describing customer access via mobile, PC, ATM, and kiosks, and corresponding employee access to the same data. See, e.g., ECF 43-1 at 113, 29, 38 (discussing "transactional usage data" available both on customer devices and Cisco-enabled employee systems).[12]

In addition, for further identification of the product, the chart repeatedly references Cisco's "Digital Banking platform," "Digital Banking Environment," and "multichannel server," with specific URLs to Cisco's own financial-services solution pages (e.g., https://www.cisco.com/c/en/us/solutions/industries/financial-services.html`, `portfolio-explorer-for-financial-services.html`, and `retail-banking.html`). It also links Cisco's public privacy and targeted-marketing materials (cookies, social scoring, persona scores, etc.) to the '508 patent's "monitoring," "targeted marketing," and "user-defined preferences" limitations. (ECF NO. 43-1 at 3, 4, 14-16, 21-23, 29, 30, 35, 36, 42).

---

[11] Ramey Decl. at ¶¶15-16.
[12] Ramey Decl. at ¶16.

These allegations may not have satisfied the Court's pleading or claim-mapping standards, but they are not consistent with the factual finding that Movants proceeded "without any semblance of a proper pre-suit investigation." (ECF No. 76 at 11) A party that prepares a limitation-by-limitation chart tied to specific URLs, screenshots, and architecture diagrams has engaged in some level of factual investigation.

### 2. The Court's Critique Goes to the Quality of the Mapping, Not the Existence of a Factual Basis

The Sanctions Order faults the amended complaint for, among other things, not naming a precise Cisco SKU, not cleanly distinguishing between marketing use-cases and specific commercial products, and not sufficiently explaining how certain graphics map to limitations such as "customer profile" or "transactional usage data." (ECF No. 76 at 1-3, 7-8) Even accepting those criticisms, they concern the sufficiency, precision, and clarity of Movants' infringement mapping—not whether there was any factual basis at all. The record shows: (1) Each accused limitation is identified and discussed in Exhibit C; (2) Cisco's own published financial-services and digital-banking materials are cited as the factual support; and (3) Screenshots and diagrams are selected and described as purporting to show the claimed functionality. That is the opposite of a complaint that simply recites "Cisco infringes" with no underlying factual content. At most, the Court found the investigation to be inadequate or mistaken; that is materially different from a finding that there was no investigation. The Preliminary Injunction, however, treats pleading-stage deficiencies as if they were conclusive proof of bad faith on a non-existent factual basis.

### 3. The Finding that the Non-IPR Claims Were Added Solely to Evade a Stay Is Unsupported by the Record

The injunction also rests on a finding that Movant "added infringement contentions against the non-instituted claims based on a desire to avoid a litigation stay," and that those contentions "were made in bad-faith without any semblance of a proper pre-suit investigation."

(ECF No. 76 at 10-11). The cited record—ECF No. 43-1 at 2, 34, 44, 45—does not support that characterization.  ECF 43-1 contains separate, dependent-claim-specific charts for claims 2, 8, 14, and 17, with narrative explanations and underlying Cisco documentation, as described above.[13]  That is not what one would expect if Movant had simply tacked on extra claim numbers in a bare effort to avoid a stay. They charted those dependent claims, tried to map them to Cisco's omnichannel banking and digital-banking materials, and made specific factual assertions about "customer profiles," "common point of control," and transactional-usage data. Whether those contentions ultimately survived Rule 12 does not change the fact that they were grounded in an identified body of Cisco documents.  The leap from, Movant attempted, but failed, to plead infringement adequately, to Movant acted in "bad faith, without any semblance of factual investigation, and solely to evade a stay" is not compelled by this record. It is an inference that depends on a characterization of ECF No. 43-1 that is materially incomplete.

### 4.  Because These Factual Findings Are At Least Seriously Contested, They Cannot Sustain a Broad Prefiling Injunction

Under *Baum*, a prefiling injunction must rest on reliable findings of vexatious, harassing conduct and must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." 513 F.3d at 187. Here, the factual predicates for the injunction include: (1) that the amended complaint "failed to identify any specific product," "failed to chart certain claim limitations," and "failed to provide an explanation of how the pictured graphics mapped to the claim language"; (2) From those pleading defects, that Movant therefore had "no semblance of a proper pre-suit investigation" and acted in bad faith to avoid an IPR stay; and, (3) mCom failed to link to any Cisco product, ignoring the Court's prior instructions.

---

[13] Ramey Decl. at ¶19.

In light of what ECF No. 43-1 actually contains—a 45-page, limitation-by-limitation chart for the asserted claims, including non-IPR claims 2, 8, 14, and 17, with detailed references to Cisco's own digital-banking and omnichannel-banking materials—those findings are, at a minimum, open to serious dispute. They overstate the factual deficiencies of Movant's investigation and conflate imperfect infringement mapping with bad-faith harassment.

Movant does not seek to relitigate the dismissal with prejudice; that is a significant, case-specific sanction the Court has already imposed. The narrow point here is that the same, disputed factual record about the amended complaint and Exhibit C has been used to justify an additional, sweeping Prefiling Injunction, and that record does not reliably establish the kind of "no investigation / bad faith" factual basis that *Baum* requires.

### 5. The Injunction's Reliance on "Other Cases" Goes Beyond What This Record Actually Establishes

The Sanctions Order invokes Mr. Ramey's "history" in other cases to satisfy *Baum* factors one and four, pointing to: (1) several WDTX cases against Cisco that were dismissed for various reasons; (ECF No. 76 at 3-4) (2) sanctions orders from other district courts; (ECF No. 76 at 4-5) (3) selected settlement communications, (ECF No. 76 at 4); and (4) high-level docket-statistics such as "roughly 80" assertions of the '508 patent and "over 600" patent cases filed in WDTX. (ECF No. 76 at 9, 15) But the way this material is used in the prefiling-injunction analysis illustrates the same problem as with the Court's treatment of the amended complaint and Exhibit C: contested facts and characterizations are being treated as if they were undisputed proof of a clear, uniform pattern of vexatious abuse.

First, the WDTX Cisco cases identified in § I.b of the Sanctions Order (AK Meeting, CTD Networks, VIAAS, Front Row) do not themselves contain findings that Mr. Ramey filed suits "without any semblance of a proper pre-suit investigation" or for the "sole" purpose of harassment.

The Order accurately notes that those complaints were dismissed—e.g., for failure to plausibly allege infringement, lack of standing, or § 101 ineligibility of related patents—but the cited dockets do not reflect vexatious-litigant determinations or prefiling bars. (ECF 76 at 3-4) (citing dismissal orders). Concluding from those mixed outcomes that Mr. Ramey has a "history of filing meritless lawsuits" and a "pattern of, at the least, filing harassing lawsuits," is an inferential step, not a factual finding compelled by the underlying records. The injunction treats that inference as if it were an adjudicated fact.

Second, the sanctions decisions from other courts collected in § I.c likewise do not say what this injunction attributes to them. Those orders show that, in specific cases, other judges deemed those matters "exceptional" under § 285 and awarded fees. They do not purport to make a global, cross-case determination that Mr. Ramey invariably fails to investigate, uniformly pursues only nuisance settlements, or should be prospectively restricted from filing any patent cases in another district. Yet the Order aggregates nine such fee awards and, without any case-by-case analysis, uses their existence to satisfy *Baum* factor four and to support the conclusion that "monetary sanctions and prior court orders have not stopped Mr. Ramey's conduct." Order § III.d. That is an extrapolation layered on top of other courts' narrower holdings; the underlying § 285 orders are not part of this record in any developed way (for example, by attaching and parsing the factual findings in each), and the injunction supplies its own overarching narrative of a "playbook" without actually tying that narrative to specific, adjudicated facts in each cited case. Moreover, at least the *Koji* case was dismissed for low sales volume, not merits and the Defendant had not even appeared.[14]

---

[14] Ramey Decl. At ¶21.

Third, the Order's use of raw docket statistics and limited snippets of settlement communications underscores how far it departs from a concrete, record-based pattern. The Court notes that mCom has asserted the '508 patent "roughly 80 times, with only one case reaching a claim construction order," and that Mr. Ramey has "filed over 600 patent litigation lawsuits since 2021 in the Western District of Texas." Order § III.a.2 & n.1; § III.d. But the Order does not identify what happened in the vast majority of those matters—whether they were dismissed on the pleadings, resolved on the merits, settled on terms commensurate with the strength of the claims, or otherwise adjudicated. Volume alone is not proof of vexatiousness; *Baum* requires a demonstrated "history of litigation" that is vexatious or harassing, not simply a high filing count. 513 F.3d at 189. Likewise, the selected emails in Exhibits 52-4 and 52-6 show that Mr. Ramey made relatively early settlement demands, but the Sanctions Order does not compare those demands to the underlying exposure in any particular case, to defense-cost estimates in those matters, or to ultimate outcomes. The leap from "early settlement offers referencing litigation expense" to a definitive finding of a uniform nuisance-settlement "playbook" is again inferential, not grounded in detailed, case-specific evidence. As well, a plaintiff cannot control a defendant's cost of defense and early settlement offers are meant to avoid expense.[15]

Fourth, *Baum* and *Nix* contemplate that a prefiling injunction will rest on "substantive findings as to the frivolous or harassing nature of the litigant's actions" based on a developed record. *Baum*, 513 F.3d at 189. Here, by contrast, the only fully developed factual record is this case—specifically, the contents of the complaints, Exhibit C, the motions practice, and the missed hearing. Further, the record shows the Court cites to the wrong claims chart.[16] The broader

---

[15] Ramey Decl. at ¶21(e).
[16] It is likely Cisco's use of ECF No. 53-1 caused the confusion. However, it is undisputed that ECF 43-1 is the claim charts for the First Amended Complaint.

"pattern" is drawn from citations to docket numbers, the bare fact that sanctions were awarded elsewhere, general docket-volume statistics, and a handful of emails. There is no hearing record or adversarial development of the facts from those other matters, and the Order does not analyze the factual findings in those opinions beyond counting them. Using that incomplete and largely undeveloped information to impose a district-wide filing restriction in this case stretches Baum's "history of litigation" factor well past what the record will bear.

Finally, to the extent the injunction relies on this aggregated "history" to convert pleading errors and a missed hearing in a single case, into proof that Mr. Ramey is a *per se* vexatious filer in all patent matters, only magnifies the underlying problem. The Court's core factual predicates about what occurred here—no meaningful investigation, allegations to avoid a stay, failure even to chart key limitations—are themselves seriously contestable in light of what the amended complaint claim charts of Exhibit C actually contain. *See supra* 4-7. Allowing those disputed premises to be amplified by generalized references to other cases and statistics, without concrete, case-specific findings of harassment in those matters, cannot support an extraordinary, district-wide prefiling bar.

On this record, the injunction is effectively grounded on: (1) a disputed characterization of the factual work product in this case; plus (2) a set of high-level references to dismissals, fee awards, and filing volumes in other cases that have not been meaningfully developed or adjudicated here. That is not the kind of clear, record-based showing that Baum requires before curtailing a litigant's and counsel's ability to file patent cases in an entire district. At a minimum, it raises serious questions going to the factual predicates for Baum factors one and four and further supports a stay pending appellate review.

Because the injunction's core factual predicates are contestable and rest on an incomplete characterization of Exhibit C, Movants have raised serious questions going to the merits of the injunction. That is sufficient to warrant a stay pending appellate review.

Those findings, even if accurate, do not by themselves compel a district-wide, indefinite Prefiling Injunction on all future patent cases. The court had at its disposal—and in fact used—monetary sanctions and case-dispositive remedies (dismissal with prejudice). It did not explain why graduated, lesser, non-monetary alternatives (such as a limited-duration injunction, targeted restrictions, or mandatory certifications) would be insufficient to address its concerns. An appellate court could reasonably conclude that leveraging a relatively contained set of case-specific issues into a sweeping, forward-looking practice limitation is disproportionate and hence an abuse of discretion.

## III. LEGAL STANDARD

In deciding a motion for stay pending appeal, is a four-part test: (1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay. *Arnold v. Garlock, Inc.,* 278 F.3d 426, 438 (5th Cir.2001) (citing *Ruiz v. Estelle,* 666 F.2d 854, 856 (5th Cir.1982) ( "Ruiz II"). While each part must be met, it is not always necessary to show a probability of "success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* at 439. (quoting *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981) ("Ruiz I")).

Sanctions orders and pre-filing injunctions are reviewed on appeal for abuse of discretion, but "[a] district court abuses its discretion when it bases its ruling on an erroneous view of the law

or on a clearly erroneous assessment of the evidence*." Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014). Legal errors and procedural defects in imposing sanctions or injunctions constitute abuse of discretion.

## IV. ARGUMENT

### A. There Are Serious Legal and Procedural Questions Regarding the Prefiling Injunction

Even acknowledging the deferential standard applicable to sanctions, the Prefiling Injunction presents substantial legal and procedural questions that support a stay or interim modification.

### 1. Overbreadth and lack of tailoring under Baum and Nix

The Fifth Circuit authorizes pre-filing injunctions only when they are "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citation omitted); *Nix v. Major League Baseball*, 62 F.4th 920, 936–38 (5th Cir. 2023). Courts weigh: (1) The history of vexatious or duplicative filings; (2) The presence or absence of a good-faith basis; (3) The burden on courts and parties; and, (4) The adequacy of alternative sanctions. *Baum*, 513 F.3d at 189.

Even assuming the Baum factors can support some sanction, the scope and duration of the Prefiling Injunction raise serious questions:  The order extends to all future complaints in the entire Western District of Texas that "include[] a claim of patent infringement," irrespective of: (1) the defendant (Cisco or otherwise); (2) The patent, technology, or industry; (3) the identity and sophistication of the client; (4) the thoroughness of any future presuit investigation.  As well, The Prefiling Injunction is indefinite. The order contains: (1) no end date; (2) no sunset provision; (3) no mechanism for prefiling certification or timeline for any pre-filing certification by the court for each future complaint of patent infringement; and, (4) no mechanism for review, modification, or

termination of the Pre-Filing Injunction upon changed circumstances. (ECF No. 76 at 17). In practical effect, this is a permanent, district-wide practice restriction on Mr. Ramey's ability to initiate patent suits in a major patent forum, triggered by conduct in a limited set of past cases and prior sanctions in other districts. While the district court recites the Baum factors (*id.* at 13-16), it does not explain why a less restrictive, more tailored measure, such as: (1) A time-limited injunction; (2) A Cisco-specific restriction, (3) A presuit-certification regime, or (4) A requirement targeted to particular clients or patent families, would be inadequate.

That disconnect between the findings and the breadth of the remedy presents a substantial question whether the Prefiling Injunction is insufficiently tailored and therefore an abuse of discretion under *Baum* and *Nix*.

**2. Disproportionate leap from case-specific misconduct to an indefinite practice restriction**

The Sanctions Order emphasizes:

- The pleading deficiencies in this case; (Sanctions Order at 1-3)

- Two missed hearings; (Sanctions Order at 3)

- Prior cases in WDTX involving Cisco; (Sanctions Order at 3–4) and

- Other fee-shifting sanctions under § 285 in other courts. (Sanctions Order at 4-5).

**3. Serious legal questions suffice where irreparable harm is strong**

Even if this Court ultimately were to uphold some form of sanction, the seriousness of these overbreadth and due-process questions, combined with the strong showing of irreparable harm (Section IV.B, below), satisfies the standard for granting a stay or temporary narrowing of the Prefiling Injunction.

**B. Mr. Ramey Will Suffer Irreparable Harm Absent a Stay or Narrowing**

The Prefiling Injunction inflicts immediate and ongoing harm that cannot be remedied by monetary damages or by a favorable appellate ruling issued months or years later.

## 1. Direct impairment of ability to practice in a leading patent forum

The Western District of Texas is a major national forum for patent litigation. The Prefiling [17]Injunction[18] (1) Chills clients from engaging Mr. Ramey for WDTX matters, knowing that any suit will be subject to an additional layer of delay and scrutiny unique to their chosen counsel; (2) Exposes Mr. Ramey to the risk that, due to preauthorization delays or denials, he may miss critical deadlines or statutes of limitation, creating malpractice exposure and discouraging him from accepting representations; and (3) Diminishes his ability to compete with other patent practitioners who face no such restrictions. These harms cannot be cured by post-hoc reversal of the Prefiling Injunction.[19]

## 2. Client harms and chilled access to counsel and forum

The Prefiling Injunction burdens not only Mr. Ramey but his current and prospective clients, who may wish to (1) Enforce their patents in WDTX, and (2) Be represented by Mr. Ramey and his firm specifically. For those clients, the injunction effectively conditions their choice of both forum and counsel on a discretionary, case-by-case gatekeeping process that applies to no other attorney. Clients may: (1) Forego meritorious claims or choose less-preferred counsel because of the added uncertainty and delay; (2) Face patent term defenses if permission is delayed; or (3) Be dissuaded from filing timely actions altogether. These distortions of client choice and forum access are non-compensable and cannot be adequately addressed by damages.

---

[17] Declaration of Carlos Gorrichategui, Ph.D ("Gorrichategui Decl.") at ¶¶4-8.
[18] ECF 76 at 17.
[19] Ramey Decl. at ¶¶21-25.

### 3. Ongoing reputational and professional stigma

The requirement that Mr. Ramey attach a copy of the Sanctions Order to any WDTX patent complaint functions as a permanent stigma as (1) it publicly brands him as uniquely sanctioned and untrustworthy in the very pleading initiating each new case;  (2) it may bias judges and adversaries at the outset, regardless of the merits of the new complaint; (3) the reputational effects will persist even if the Prefiling Injunction is later reversed or modified on appeal.  Reputational injuries of this sort are a classic form of irreparable harm.

### 4. No adequate remedy on appeal

If the Prefiling Injunction is enforced during the pendency of this appeal, the following injuries will likely occur: (1) Loss of client engagements and opportunities;  (2) Missed or compromised filings; (3) Lasting reputational damage in the patent bar and before the WDTX bench.[20]  These cannot be undone or compensated later, even if the Prefiling Injunction is ultimately held unlawful or narrowed. This satisfies the requirement of irreparable harm.

### C. A Stay or Narrow Modification Will Not Substantially Injure Cisco or Others

Cisco will not be materially harmed by a temporary stay or narrowing of the Prefiling Injunction.

### 1. Cisco remains protected by the existing sanctions and standard tools

The Sanctions Order's monetary fee award and findings of exceptionality under § 285 and sanctions under § 1927 would remain in place during this appeal. If Mr. Ramey were to file any meritless future suit against Cisco, the district court and Cisco would: (1) Retain all ordinary tools—Rule 11, Rule 16, Rule 37, § 1927, § 285, and the court's inherent powers—to sanction

---

[20] Gorrichategui Decl.") at ¶¶9-11.

misconduct; (2) Be able to seek attorneys' fees and further sanctions based on any new, case-specific conduct.  Cisco is therefore not left without recourse if misconduct recurs.

## 2. Other potential defendants face no new risk

Other potential defendants in future WDTX cases are in no worse position than defendants in any other patent case: (1) They benefit from the existing sanctions order as background deterrent; (2) They retain all usual procedural and substantive protections.  A stay or narrowing merely removes an additional, extraordinary layer of pre-filing restriction imposed on one attorney and his Firm.

## 3. Conditional or alternative relief further minimizes any potential injury

If the Court prefers not to stay the Prefiling Injunction entirely, it can: (1) Require Mr. Ramey to file presuit-investigation certifications with any WDTX patent complaint during the appeal; (2) Require that he simultaneously serve such certifications on the district's chief judge and on any opposing party; (3) Impose a short, defined timeframe in which any WDTX judge must act on a preauthorization request.  These conditions preserve court oversight and deterrence while avoiding the most severe harms of an open-ended filing gate.

## D. The Public Interest Favors a Stay or Narrowing of the Prefiling Injunction

## 1. Public interest in access to courts and experienced patent counsel

The public has an interest in: (1) Effective enforcement of patent rights, which requires access to major patent forums like WDTX; (2) Freedom of clients to choose their counsel, particularly counsel with specialized experience.[21]  Sweeping, indefinite practice restrictions on specific

---

[21] Gorrichategui Decl.") at ¶¶4-8, 10.

attorneys, without careful tailoring and full due-process safeguards, chills representation of small or resource-constrained patent holders and undermine confidence in the fairness of the system.

## 2. Public interest in constrained use of extraordinary sanctions

Courts undeniably have a strong interest in deterring vexatious litigation. But the public also has an interest in: (1) Ensuring that extraordinary remedies such as district-wide, attorney-specific pre-filing injunctions are: (1) Imposed only when truly necessary; (2) Narrowly tailored; and (3) Supported by robust procedural protections.  A stay or temporary narrowing of the Prefiling Injunction does not strip the district court of its power to sanction; it only preserves the status quo while this Court addresses serious legal questions about the injunction's scope and process.

## 3. Availability of alternative regulatory mechanisms

To the extent that recurring patterns of misconduct raise broader concerns, public confidence in the bar is often better served by (1) Clear, case-specific sanction orders and (2) Transparent, rule-based processes.  Relying instead on indefinite practice-limiting orders in a single case's sanctions ruling risks inconsistent application and overreach.

## V. ALTERNATIVE RELIEF

If the Court declines to stay the Prefiling Injunction in full, Mr. Ramey respectfully requests that the Court grant one or more of the following interim modifications pending appeal:

## 1. Sunset provision:

Modify the Prefiling Injunction so that it automatically expires after 6 months from the date of the Sanctions Order unless affirmatively renewed by the district court upon a further, fact-specific showing.

**2. Prompt-decision safeguard:**

Require that any pre-filing permission request submitted under the Prefiling Injunction be resolved by the assigned WDTX judge within 3-5 calendar days of submission, and that permission be deemed granted if no ruling issues within that period.

**3. Conversion to a reporting/certification regime:**

Replace the preauthorization requirement with an obligation that, during the pendency of the appeal: (1) For each new complaint in WDTX asserting patent infringement, Mr. Ramey must file a presuit-investigation declaration describing the steps taken to investigate infringement and standing; and (2) Serve a copy of that declaration on the assigned judge.

**4. Limitation to Cisco-related matters:**

Narrow the Prefiling Injunction so that, pending appeal, it applies only to cases brought against Cisco Systems, Inc., i.e., the party at issue in the Sanctions Order, rather than to all patent infringement complaints against any defendant. This was the relief sought by Cisco. (ECF No. 52 at 20) These alternatives would substantially mitigate irreparable harm while preserving meaningful court oversight consistent with the district court's expressed concerns.

**VI. CONCLUSION**

For the foregoing reasons, Mr. Ramey respectfully requests that this Court: (1) Stay enforcement of the Prefiling Injunction portion of the Sanctions Order (ECF No. 76 at 17) pending disposition of this appeal; or (2) In the alternative, grant a narrower interim modifications described in Section V.

Respectfully submitted,

**Ramey LLP**

_/s/William P. Ramey, III_
William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

**_Attorneys for MCOM IP, LLC and William P. Ramey, III_**

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 18, 2025, I conferred with counsel for Defendant concerning this extension of time and he is unopposed. Counsel was also opposed to a modified injunction limited to what it requested.

_/s/ William P. Ramey, III_

William P. Ramey, III

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of  December 18, 2025, with a copy of the foregoing via email and ECF filing.

_/s/ William P. Ramey, III_

William P. Ramey, III

21